ST CLAIR PROSECUTOR v AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, ST CLAIR
COUNTY GENERAL EMPLOYEES CHAPTER, LOCAL 1518

MICHIGAN COUNCIL 25, AFSCME, AFL-CIO v ST CLAIR COUNTY

Docket Nos. 72125, 74974, 75365. Argued December 17, 1985 (Calendar Nos. 5, 6). Decided June 3, 1986.

The St. Clair Prosecutor and St. Clair County brought an action in the St. Clair Circuit Court against the American Federation of State, County and Municipal Employees, AFL-CIO, St. Clair County General Employees Chapter, Local No. 1518, and Sharon M. Parrish, seeking to permanently enjoin arbitration under the provisions of a collective bargaining agreement between the county and the union, regarding the termination of Ms. Parrish, a former assistant prosecutor, and for a declaration regarding her employment status. The court, Martin E. Clements, J., enjoined arbitration proceedings, holding that the prosecutor had the power to legally reserve for himself the right to discharge assistant prosecutors at will and was not bound by provisions to the contrary in a collective bargaining agreement which the prosecutor did not negotiate and to which he did not consent, directly or indirectly, including provisions regarding employee tenure. The Court of Appeals, WAHLS, P.J., and M. J. KELLY and WARSHAWSKY, JJ., reversed in an unpublished opinion per curiam, holding that the circuit court was without jurisdiction to rule on the merits of the dispute and that whether the prosecutor relinquished, waived, or otherwise lost his statutory authority to fire at will as a result of the bargaining process and agreement was a proper question for arbitration (Docket No. 61665).

Subsequent to the circuit court's judgment, but prior to its

REFERENCES

Am Jur 2d, Arbitration and Award §§ 11-53.

Am Jur 2d, Public Officers and Employees §§ 170 et seq.

Validity and construction of statutes or ordinances providing for arbitration of labor disputes involving public employees. 68 ALR3d 885.

See also the annotations in the ALR3d/4th Quick Index under Arbitration and Award; District and Prosecuting Attorneys; Public Officers and Employees.

reversal by the Court of Appeals, Michigan Council 25, AFSCME, filed unfair labor charges under the public employment relations act against the county with regard to the termination of the assistant prosecutor. The Employment Relations Commission affirmed a decision by a hearing referee, holding that the circuit court's judgment was not res judicata with respect to the union's charges before the MERC, the interpretation by the court of the statute providing the prosecutor's removal power was not binding on the MERC, that the MERC did not purport to decide whether the grievance of the assistant prosecutor was arbitrable, that the county and the prosecutor must comply with current and previous collective bargaining agreement provisions for arbitration, that the prosecutor was not a joint employer with the county, that the prosecutor's failure to give timely notice of his intention to retain his removal power affirmatively subverted good-faith bargaining, and that the county violated the PERA. The Court of Appeals, BEASLEY, P.J., and GRIBBS and ERNST, JJ., affirmed in part and reversed in part in an opinion per curiam, holding that the county and the prosecutor are coemployers, but that the prosecutor's employment powers were subject to the collective bargaining requirements of the PERA. The Court further held that the prosecutor, in failing to bargain over his statutory prerogatives concerning the tenure of his appointees, had waived his rights as coemployer (Docket No. 70006). The prosecutor and the county appeal.

In an opinion by Justice BRICKLEY, joined by Chief Justice WILLIAMS and Justices LEVIN, CAVANAGH, BOYLE, and RILEY, the Supreme Court *held:*

The circuit court had jurisdiction to determine whether the prosecutor was a party to the arbitration clause of the contract. The prosecutor was a coemployer, did not waive his authority to bargain with regard to the tenure of his appointees, and was not required to arbitrate the removal of an assistant under the terms of a collective bargaining agreement between the county and the union.

1. The circuit court was correct in assuming jurisdiction to determine whether the prosecutor was bound by the arbitration provisions of the collective bargaining agreement. The existence of a contract to arbitrate is a judicial question which cannot be decided by an arbitrator. The question for the court is not whether one interpretation or another is correct, but whether the parties have agreed that an arbitrator shall decide which of the competing interpretations is correct. A party cannot be required to arbitrate an issue where there is no

agreement to arbitrate; nor can a party be required to arbitrate where not legally or factually a party to an agreement.

2. The prosecutor, by virtue of the appointment/tenure statute, is a coemployer with the county. The prosecutor has the power to hire, manage, and terminate assistants, and the county, through its board of supervisors, has the power to control the number and remuneration of assistant prosecutors. The appointment/tenure statute does not conflict with the requirement that a public employer bargain collectively. The PERA does not preclude the need to bargain with more than one coemployer. In this case, the prosecutor recognized the duty to bargain collectively and claimed readiness to do so. Absent waiver of the right to bargain, the prosecutor was not bound by the arbitration clause to which he was not a party.

3. The county and the union were well-advised that there were employer prerogatives statutorily vested in the prosecutor, that the prosecutor did not intend to surrender them to any other entity of county government, and that the prosecutor professed a desire to bargain with regard to them with the representatives of his staff. Under the PERA, an employer may not refuse to bargain, but is not required to initiate bargaining. In this case, no evidence was presented that the union requested the prosecutor to bargain. There was no evidence that the prosecutor in office at the time bargaining began waived his rights as a coemployer or acquiesced in such a waiver. Nor did the plaintiff, upon succeeding to the office of prosecutor, say or do anything that would have led the parties to the bargaining to believe that there had been a sudden shift in the position of the prosecutor's office. Thus, the prosecutor retained his rights as coemployer to bargain on the issue of the tenure of assistant prosecutors.

4. The Court of Appeals did not err in concluding that the evidence did not substantiate the finding by the MERC of an unfair labor practice on the part of the county. There was a genuine dispute over the arbitrability of the termination of the assistant prosecutor which was timely tested in good faith in what was subsequently determined to have been the proper forum.

Affirmed in part and reversed in part.

Justice ARCHER took no part in the decision of this case.

136 Mich App 721; 357 NW2d 750 (1984) affirmed in part and reversed in part.

1. ARBITRATION — COURTS — JURISDICTION.

The existence of a contract to arbitrate is a judicial question

which cannot be decided by an arbitrator; a party cannot be required to arbitrate an issue where there is no agreement to arbitrate; nor can a party be required to arbitrate where not legally or factually a party to an agreement.

2. PROSECUTING ATTORNEYS — COUNTIES — COEMPLOYERS.

A prosecutor, by virtue of the statutory power to appoint, manage, and terminate assistant prosecutors, is a coemployer of such assistants with a county (MCL 49.41, 49.42; MSA 5.801, 5.802).

3. PROSECUTING ATTORNEYS — PUBLIC EMPLOYERS.

The requirement, under the public employment relations act, that an employer must bargain collectively with the representatives of its employees in respect to rates of pay, wages, hours of employment, or other conditions of employment does not conflict with the statutory power of a prosecuting attorney to hire, manage, and terminate assistant prosecuting attorneys (MCL 49.41, 49.42, 423.210[1][e], 423.211, 423.215; MSA 5.801, 5.802, 17.455[10][1][e], 17.455[11], 17.455[15]).

*Touma, Watson, Nicholson, Whaling, Fletcher & DeGrow, P.C.* (by *Gary A. Fletcher* and *Michael L. West*), for St. Clair Prosecutor and St. Clair County.

*M. Elizabeth Bunn* for AFSCME, AFL-CIO, St. Clair County General Employees Chapter, Local No. 1518 and Michigan Council 25, AFSCME, AFL-CIO.

Amicus Curiae:

*Steven L. Pence,* Delta County Prosecuting Attorney, for Prosecuting Attorneys Association of Michigan.

BRICKLEY, J. This matter poses the following questions: whether the circuit court had jurisdiction to decide the arbitrability of an assistant prosecuting attorney's (APA) removal from office under a collective bargaining agreement entered into by the county and the union without the participation of the prosecuting attorney; whether

the prosecutor is a coemployer with the county; whether the public employment relations act affects the power of the prosecutor under MCL 49.41-49.43; MSA 5.801-5.803, the statute which provides that an APA shall hold office "during the pleasure of the prosecuting attorney appointing him"; and, assuming the prosecutor was a coemployer, whether that status was waived.

We hold there was jurisdiction in the circuit court to determine the threshold question— whether the prosecutor was a party to the arbitration clause of the contract. We further find that the prosecutor was a coemployer, that the Court of Appeals properly found no conflict between the PERA and the prosecutors' appointment/tenure statute, that the prosecutor did not waive his authority to bargain on the tenure of his appointees, and that, accordingly, the prosecutor was not required to arbitrate his removal of an APA under the collective bargaining agreement between the county and the union. Except as to the finding that the public employer did not commit an unfair labor practice, we reverse the judgments of the Court of Appeals.

I

These consolidated cases, involving essentially the same dispute between the same parties,[1] have simultaneously wended their way here through different forums. The second and final Court of Appeals opinion contained a clear and balanced summary of the factual and legal history of the case which we set forth.

---

[1] AFSCME Local 1518, the defendant in the appeal of the circuit court action by the prosecutor and the county is a local chapter of the plaintiff, Michigan Council 25, AFSCME, in the cross-appeals of the MERC action brought against the county.

The facts in this case are largely uncontroverted. On July 27, 1976, [plaintiff union] was certified in MERC Case No. R 76E-282 as the exclusive representative of the general county bargaining unit, including professional and technical employees.

On April 28, 1977, the assistant prosecuting attorneys in St. Clair County wrote a letter to the union representative indicating that they were not "includable among your county workers because, among other things, we have duties and responsibilities of a different nature from those of other county employees." Accordingly, the assistant prosecuting attorneys requested to be excluded from union representation.

A similar letter was sent to the county administrator, advising him that these attorneys did not desire to be represented by the union and that the union had no authority to negotiate on their behalf. On May 19, 1977, a follow-up letter was sent to the union by the assistant prosecuting attorneys, noting that they had not received any response to their previous letter and requesting that the union take whatever steps were necessary to ensure that they would no longer be considered a part of the union bargaining unit.

On October 3, 1977, the union was again certified as the general county bargaining unit under MERC Case No. R 778-390, including professional and technical employees and not excluding assistant prosecuting attorneys. Included in the list of eligible voters prepared by the county for the 1977 union election were the names of the assistant prosecuting attorneys. Pursuant to the 1977 certification, a collective-bargaining agreement covering the period from January 1, 1978, to December 31, 1980, was negotiated between the union and the county.

On January 3, 1978, the assistant prosecuting attorneys and clerical personnel of the prosecuting attorney's office filed a petition for election with MERC requesting that the union be decertified as to them. On May 4, 1978, a letter was written to the

county personnel officer and to the union represen-
tatives notifying them that the assistant prosecut-
ing attorneys were not and would not be part of
the union bargaining unit. In addition, the letter
indicated that they intended to contest unioniza-
tion by filing suit for ex parte injunctive relief in
the circuit court.

On May 16, 1978, the assistant prosecuting at-
torneys, clerical staff, and office investigator filed
suit against the county, the county commissioners,
the county administrator, and the union. The com-
plaint reiterated the previous claim that the assis-
tant prosecutors did not wish to be represented by
the union and that each of them was an employee
of the then county prosecutor, Peter E. Deegan,
serving at this pleasure.

Based upon the allegations in this complaint,
then Circuit Court Judge Halford Streeter granted
the plaintiffs' motion for a preliminary injunction
and temporary restraining order to prevent the
collection of union dues or service fees from the
named plaintiffs. The injunction effectively ex-
cluded the assistant prosecuting attorneys from
the bargaining unit since, as the union representa-
tive testified, in order to be a member in good
standing of the union, it was necessary to be a
dues-paying member.

In August of 1978, the assistant prosecuting
attorneys reversed direction, decided to become
part of the union bargaining unit and filed a
grievance, claiming that they were covered by and
entitled to wage increases under the 1978-1980
collective-bargaining agreement between the union
and the county.

The county personnel officer, Terry Pettee, sent
a letter to the union representative advising that
the county would remain neutral in regard to the
assistant prosecuting attorneys' grievance. The
county offered to provide full retroactive pay to
the named employees, should it be determined
that they were members of the bargaining unit,
but only if the attorneys withdrew "the matter
from further litigation." The assistant prosecuting

attorneys accepted the county's offer and voluntarily dismissed the circuit court action.

On June 11, 1979, the county sent a letter to the union acknowledging that the assistant prosecuting attorneys were now a part of the union bargaining unit. The letter, however, indicated that there were some areas of the collective-bargaining agreement which had questionable application to the assistant prosecutors because of their professional status. Specifically, the letter noted that the discharge provisions were inapplicable because of the statute providing that assistant prosecutors serve at the pleasure of the county prosecuting attorney. According to the union representative, the position taken in this letter was never disputed or responded to by the union. Similarly, the county never proposed amending the contract to include special language regarding the assistant prosecuting attorneys.

On August 13, 1980, prior to expiration of the 1978-1980 collective-bargaining agreement, a memorandum was sent to department heads informing them that the bargaining agreement would expire at the end of 1980 and that a meeting had been scheduled so that the department heads could express their concerns regarding negotiations for a new agreement. In response, Prosecutor Deegan sent a letter to the personnel office indicating that he intended to take an active part in the negotiations which affected the employees of his office. The prosecutor also sent a letter to the local union representative in which he again announced his intention to take an active part in the upcoming negotiations. He, however, stated that he was not bound by the then-current collective-bargaining agreement because he "took no part in its formation, negotiation or execution."

On December 31, 1980, a new collective-bargaining agreement had not been reached, so an agreement was made extending the formal [sic] union contract on a day-to-day basis. Robert Cleland took office as St. Clair County Prosecuting Attorney on January 1, 1981, when the contract day-to-day

extension was in effect. On February 12, 1981, Cleland wrote to the county administrator, advising that no one had the authority to negotiate on his behalf and that, as prosecuting attorney, he intended to retain all of his statutory prerogatives. Nevertheless, he provided that he did not have any objection to negotiations being undertaken in his behalf with respect to wage scales and other financial matters. At the county's request, he did not, however, assert his right to exercise his statutory powers as prosecutor until the negotiations on the new bargaining agreement were concluded. In accordance with the county's request, the prosecutor waited until a tentative agreement had been reached between the county and the union before advising the union of his objections to the county's negotiations on his behalf as to nonfinancial matters.

In a letter dated March 11, 1981, he informed the union that "[t]he county administration does not now have, nor has it ever had, permission or authority from me, or my predecessor, to negotiate or bargain or agree upon any issue, with the employees of my office, which touches upon the hiring, discipline, discharge, or conditions of work of my office." The letter further provided that he did not object to financial matters "being resolved by the collective-bargaining undertaken by the county." The 1981-1982 collective-bargaining agreement was ratified on March 12, 1981. The union does not admit receiving the prosecutor's letter until some time after that date.

On January 8, 1981, Assistant Prosecuting Attorney Sharon Mormon Parrish filed a grievance against Prosecutor Cleland for having terminated her employment on January 1, 1981, without just cause. In her February 23, 1981, demand for arbitration, she claimed that she was entitled to arbitration under the 1980 collective-bargaining agreement. Following her demand for arbitration, Prosecutor Cleland and the county filed suit in the St. Clair County Circuit Court requesting a permanent injunction to restrain the use of arbitration

by Assistant Prosecutor Parrish and the union. In that case, plaintiffs also sought a declaratory judgment regarding the employment status of Assistant Prosecutor Parrish.

On November 5, 1981, visiting Circuit Court Judge Martin E. Clements rendered an opinion recognizing that the question before the court was one of arbitrability. He noted that whether a dispute is arbitrable is a question for the court, but that the inquiry was confined to ascertaining whether the parties seeking arbitration are making a claim which, on its face, is governed by the contract. After deciding that, on its face, there is no question as to the applicability of the contract provisions regarding arbitration to assistant prosecutors, he determined that Prosecutor Cleland could legally reserve unto himself the right under the statute to discharge assistant prosecutors at will, whether or not any provisions to the contrary were contained in the collective-bargaining agreement.

The trial court further held that because the prosecutor did not negotiate with the bargaining agent and did not consent to the contract provisions regarding employee tenure, the arbitration provisions of the collective-bargaining agreement did not bind the prosecutor. Accordingly, the trial court ruled that neither the union nor the assistant prosecutor, Sharon Parrish, was entitled to arbitration. On December 14, 1981, an order was entered enjoining "all arbitration proceedings concerning the termination or discharge of Sharon Mormon Parrish from her employment."

The judgment of the trial court was reversed by this Court in *Cleland v American Federation of State, County & Municipal Employees, AFL-CIO,* an unpublished per curiam opinion released June 29, 1983, Docket No. 61665. We held that:

"When the parties to a collective bargaining agreement have agreed to submit questions on the document's interpretation to arbitration, a court's initial review is merely for the purpose of determining whether the party seeking arbitration is

making a claim which on its face is governed by the agreement. . .

"The union claimed in this case that the county and the prosecuting attorney had violated a specific provision of the contract in terminating an assistant prosecutor's employment without just cause. The county took the position that it had not violated that clause because the prosecuting attorney intended to retain his statutory power to fire at will and without just cause notwithstanding the collective bargaining agreement's just-cause provision. There was, therefore, a dispute over whether the discharge was 'improper,' and the contractual provision outlining a specific grievance procedure, leading to binding arbitration, should have been followed. . . . The circuit court was without jurisdiction to rule on the merits of the parties' dispute.

"We hold that whether the prosecutor relinquished, waived, or otherwise lost his statutory authority to fire at will as a result of the bargaining process and agreement is a proper question for arbitration." (Citations omitted.)

An application for leave to appeal from our decision reversing the trial court has been filed in the Supreme Court, which application has not been ruled upon as of this writing. Consequently, for purposes of this opinion, we treat our decision under Docket No. 61665 as being the law of this case.

In addition to the demand for arbitration filed under the 1980 collective-bargaining agreement, the union filed a charge against defendant county for an alleged unfair labor practice under § 10 of PERA.

The original charge was filed on June 3, 1981, claiming that termination of Sharon Mormon Parrish's employment was a result of or in retaliation for her exercise of rights granted under PERA. She apparently believed she had been fired because of an alleged active role on behalf of herself and fellow employees regarding various employment issues.

An amended charge was filed on September 1, 1981, claiming that in addition to the original charge the county had repudiated its negotiated collective-bargaining agreement with the union insofar as it related to employees in the prosecutor's office. Because the county allegedly refused to acknowledge the contract provisions regarding discipline, discharge, arbitration, and overtime pay, the union claimed that the county was in violation of § 10(1)(e) of PERA.

On September 3, 1982, a hearing referee filed a decision and recommended order. It must be noted that at the time he filed his decision this Court had not yet reversed the circuit judge's judgment. The hearing referee did not accept the determination of the circuit judge, but largely acted in disregard of and as though he were not bound by the circuit judge's ruling. Whether or not he was correct on the merits in his disagreements with the circuit judge's conclusions, he seems to have missed the fact that the county and the prosecuting attorney were not in a position to make independent determinations of the merits of the circuit judge's judgment and to decide whether or not they would obey. Consequently, until June 29, 1983, when we reversed the circuit court, we believe that the county and the prosecuting attorney for St. Clair County were bound by and entitled to rely on the judgment of the circuit court.

On February 23, 1983, before this Court reversed the circuit court's judgment, MERC issued its decision and order, largely affirming the decision and recommended order of the hearing referee, albeit in a more temperate fashion than by the latter. MERC held:

1. The circuit court's judgment was not res judicata with respect to the union's charges before MERC.

2. The interpretation of the prosecutor's removal statute made in the circuit court's judgment was not binding on MERC.

3. MERC does not purport to decide whether the

grievance of the assistant prosecutor, Sharon Parrish, is arbitrable.

4. The county and the prosecutor must recognize and comply with both collective-bargaining agreements (one retroactive to January 1, 1981, and the other which, by its terms, expired December 31, 1980), a provision of each being arbitration of grievances (thus, requiring arbitration of the assistant prosecutor's grievance).

5. The prosecutor is not a joint employer with the county.

6. The alleged failure of Prosecutor Cleland to give more timely notice of his intention to keep the prosecutor removal statute as a working part of any collective-bargaining agreement "affirmatively subverted good faith bargaining."

7. The county violated § 10(1)(e) of PERA. [*Michigan Council 25, AFSCME v St Clair Co,* 136 Mich App 721, 726-734; 357 NW2d 750 (1984).]

II

This second Court of Appeals panel then affirmed in part and reversed in part the MERC decision. In addition to its findings on the major issues, the Court of Appeals noted that the question whether the MERC had been barred by the circuit court's injunction was rendered moot by its subsequent reversal.

Most importantly and central to the resolution of this case, the Court of Appeals, disagreeing with the MERC, held that the prosecutors' statute, MCL 49.41-49.43; MSA 5.801-5.803 (the appointment/tenure statute), gives the prosecutor sufficient employment powers to make him a coemployer with the county. However, it held that these rights are "subject to the collective-bargaining requirements of PERA."

The Court of Appeals further found that Prosecutor Deegan had not waived his rights because of

his notification to the union of his intention to protect his statutory right, as well as the fact that "the assistant prosecuting attorney joined the union bargaining unit after the 1978-80 contract was already in effect." Prosecutor Cleland's status, however, was deemed to be a different matter. The Court found that the MERC did not err in finding that Prosecutor Cleland had failed "to actively participate in the collective bargaining with the union" and that he thereby waived his coemployer rights to bargain over his statutory prerogatives concerning the tenure of his appointees.

> Although the 1981-1982 contract was not ratified until after she was discharged, the contract was deemed to apply retroactively so that it was in effect as of January 1, 1981. Since the 1981-1982 contract was in effect on January 1, 1981, the date Sharon Parrish was discharged, Prosecutor Deegan's reservation of rights under the previous contract is irrelevant. [*Michigan Council 25, supra,* pp 742-743.]

Finally, the Court of Appeals reversed the MERC finding that the defendant county had engaged in bad-faith bargaining. The Court noted that that specific charge had not been brought by the union and the fact that the county and the prosecutor were caught between conflicting judgments of a circuit court and an MERC hearing referee.

When the first Court of Appeals decision was appealed in this Court, we delayed consideration pending the second decision. Leave to appeal was granted, and the two cases were consolidated. 422 Mich 856 (1985).

III

The first issue in the resolution of these cases is

the jurisdiction of the circuit court to determine the arbitrability of this APA termination; the second is the status of a prosecutor as an employer and how it is affected by the PERA; and the third is whether the prosecutor waived his employer status and is thereby bound by the tenure provisions of the collective bargaining agreement.

A

The appellant county argues that "[t]he Court of Appeals . . . never addressed the issue of whether the prosecutor was bound by the contract." It maintains that the issue is "whether there was an enforceable agreement to arbitrate. Both the Courts of this State and the Federal Courts have determined [that] the existence of an enforceable agreement to arbitrate is a matter for the courts."

The general rule regarding jurisdiction on arbitrability questions was enunciated in *Kaleva-Norman-Dickson School Dist v Kaleva-Norman-Dickson Teachers' Ass'n,* 393 Mich 583; 227 NW2d 500 (1975), cited by the circuit court and both parties. In that case, a teacher's grievance arbitration had been enjoined by the circuit court, which found that the claim was not arbitrable under the contract. The issue was "the extent of a court's inquiry when a party to a collective bargaining agreement containing an arbitration clause seeks to enjoin arbitration of a grievance involving an issue of contract interpretation on the ground that the dispute is not within the agreement to arbitrate." *Kaleva, supra,* p 586. Quoting *United Steelworkers of America v American Mfg Co,* 363 US 564, 568; 80 S Ct 1343; 4 L Ed 2d 1403 (1960), this Court stated:

[W]hile the question whether a dispute is arbi-

trable is for a court, the judicial inquiry "is confined to ascertaining whether the party seeking arbitration is making a *claim which on its face* is governed by the contract." Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. [*Kaleva, supra,* p 591. Emphasis in original.]

Quoting again from *Steelworkers,* the *Kaleva* Court emphasized:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the *arbitration clause* is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." . . . Absent an "*express provision* excluding [a] particular grievance from arbitration" or the "*most forceful* evidence of a purpose to exclude the claim," . . . the matter should go to arbitration . . . . [*Id.,* p 592. Emphasis supplied in *Kaleva.*]

The school board's claim in that case was similar to the county and the prosecutor's argument in the instant case. The board maintained that it was not asking the Court "to interpret or apply any provision of the [collective bargaining] agreement because [the teacher's] claim 'on its face' is not governed by the agreement *but by the reserved rights of the board, including its rights under the teachers' tenure act." Id.,* p 591 (emphasis added). This Court found that the teacher's "*claim* is not based on the teachers' tenure act but on the collective bargaining agreement. Whether she has a valid *claim* is 'governed by the contract.' " *Id.* (emphasis in original).

Because the school board in that case did not "specifically reserve" from arbitration claims arising under the "discharge for just cause only"

clause of the collective bargaining agreement, this Court found that there was "no evidence, forceful or otherwise, of a purpose to 'exclude' from arbitration claims based on" that clause of the agreement. *Id.,* p 593. We held:

> The question for the court is not whether one interpretation or another is correct, but whether the parties have agreed that an arbitrator shall decide which of the competing interpretations is correct.
>
> *       *       *
>
> The rule promulgated by the United States Supreme Court puts the burden on the party who would exclude a matter from a general arbitration clause to do so expressly and explicitly. We adopt that rule. [*Id.,* p 595.]

As set forth earlier, the trial court in this case concluded that while the contract arbitration provision applied to APAS, there was a fundamental underlying question of law as to whether "a Prosecutor can legally reserve unto himself the right to discharge assistant prosecutors at will dispite [sic] any provision in the collective bargaining agreement with the county to the contrary."

The Court of Appeals, in reversing the judgment of the circuit court, said:

> There was, therefore, a dispute over whether the discharge was "improper," and the contractual provision outlining a specific grievance procedure, leading to binding arbitration, should have been followed.

We think that, while *Kaleva* applies to this case, the Court of Appeals and the MERC applied it too simplistically, without considering the true nature of the question to be resolved in this case. The

circuit court judge was absolutely correct when he observed that "on its face," this collective bargaining agreement covers this *dispute,* in that APAS are not specifically exempted from the "just cause" clause. However, what he perhaps should have said explicitly was, while the *dispute* appears to be covered, the question remains *whether there was an agreement extant between the prosecutor (assuming he is the employer) and the union* to submit these disputes to arbitration. In other words, in analyzing whether there was an agreement to arbitrate in this case, the focus should be on the *parties,* not the nature of the dispute.

In *Kaleva,* the school board sought to bring the teacher tenure act into consideration, but that act was relevant to the substance of the dispute, not to whether that type of dispute fell under the collective bargaining agreement or whether there was agreement between the parties. By contrast, in the instant case, any potential conflict between the PERA and the prosecutors' appointment/tenure act is relevant to a determination whether the necessary parties had an agreement at all.

Once the issue is properly framed, certain language from *Kaleva* becomes more pertinent, and supports a judicial determination of the larger question. As noted above, *Kaleva* emphasized that "[t]he question for the court is . . . *whether the parties have agreed* that an arbitrator shall decide . . . ." *Kaleva, supra,* p 595. The focus in *Kaleva* was on *"the matter"* to be arbitrated, not on the parties to the agreement. In the instant case, the question "whether the parties have agreed" cannot be answered until the question of the prosecutor's role in bargaining is resolved.

The nature of the jurisdictional issue in the instant case is far more analogous to that addressed by the United States Supreme Court in

*John Wiley & Sons, Inc v Livingston,* 376 US 543; 84 S Ct 909; 11 L Ed 2d 898 (1964). That case involved a merger between two employers, one of which had a contract with the union. One of the questions presented was whether the court or the arbitrator should decide whether the arbitration provisions survived the merger.

The *Wiley* Court first enunciated the general rule to be applied in these situations:

> *[W]hether or not the company was bound to arbitrate,* as well as what issues it must arbitrate, *is a matter to be determined by the Court* on the basis of the contract entered into by the parties. [Citations omitted. *Wiley, supra,* p 547. Emphasis added.]

It noted, "[h]ere *the question is whether Wiley,* which did not itself sign the collective bargaining agreement on which the Union's claim to arbitration depends, *is bound at all* by the agreement's arbitration provision." *Id.,* p 547 (emphasis added). Ultimately, the Court found that even though Wiley had not signed the contract, the agreement to arbitrate survived the merger.

The critical holding of *Wiley,* of course, is the jurisdictional one. The Court's conclusion that the question whether a particular employer is bound by an arbitration agreement should be one for the court to decide rested upon a foundation of contract law.

> The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so a fortiori, *it cannot be compelled to*

> arbitrate *if an arbitration clause does not bind it at all.* [*Id.,* p 547. Emphasis added.]

The rule of *Wiley* has recently been reaffirmed. See *AT&T Technologies, Inc v Communications Workers of America,* 475 US —; 106 S Ct 1415; 89 L Ed 2d 648 (1986).

This Court has also emphasized that where the question is a threshold contractual one, jurisdiction properly lies with the court. As this Court in *Kaleva, supra,* p 587, noted, "Arbitration is a matter of contract." In *Kaleva,* it was said that "[a] party cannot be required to arbitrate an issue which he has not agreed to submit to arbitration"; likewise, in this case, it may be said that a party cannot be required to arbitrate when it is not legally or factually a party to the agreement. In *Arrow Overall Supply Co v Peloquin Enterprises,* 414 Mich 95, 99; 323 NW2d 1 (1982), involving commercial arbitration, this Court stated:

> The existence of a contract to arbitrate and the enforceability of its terms is a judicial question which cannot be decided by an arbitrator.

The Court of Appeals itself applied *Wiley* to a similar issue in *Waterford Ass'n of Educational Secretaries v Waterford School Dist,* 95 Mich App 107; 290 NW2d 95 (1980). That case involved enforcement of arbitration awards under an agreement entered into during an interim period between collective bargaining agreements. The Court of Appeals made particular note of the fact that

> the trial court was not faced with the question of the arbitrability of the particular dispute under the terms of the arbitration clause; rather, the court addressed *the threshold question of the very existence of an arbitration agreement.* It is only

when this preliminary inquiry results in a finding that an existing arbitration clause governs grievance settlement that the court may proceed to a limited review of the panel's award. [*Id.,* p 109.]

The *Waterford* Court concluded,

Thus, the authority exercised by the trial court was not beyond its power to act. In effect, the trial court was determining whether an agreement to arbitrate existed, rather than the scope of an arbitration clause or merits of the particular case. [*Id.,* p 110.]

We conclude that the trial court was correct in assuming jurisdiction to determine whether the prosecutor was bound by the arbitration provision of the agreement that otherwise, all agree, would certainly encompass this dispute.

**B**

Having determined that the circuit court possessed the jurisdiction to decide the question whether the prosecutor was bound by the arbitration clause, we next decide the correctness of its finding that the prosecutor had employer rights under the appointment/tenure statute which were not extinguished by the PERA. This question involves the status of the prosecutor as coemployer,[2]

[2] We employ the term "coemployer" to describe the status of the prosecutor that is disputed in this case. Although the Court of Appeals has used the terms "joint employer" and "coemployer" interchangeably, see *Michigan Council 25, supra; Capitol City Lodge No 141, FOP v Meridian Twp,* 90 Mich App 533, 539; 282 NW2d 383 (1979), there is an important distinction.

Under federal labor law, "joint employer" is equivalent, for our purposes, to a "single employer." The single employer doctrine treats two separate employers as a single unit for collective bargaining purposes. See *Pulitzer Publishing Co v NLRB,* 618 F2d 1275, 1279 (CA 8, 1980). But see, 2 ABA Section of Labor and Employment Law,

as well as the resolution of any potential conflict between the prosecutors' act and the PERA.

The Court of Appeals reversed the decision of the MERC on the question of the prosecutor's status as an employer in relation to the APAs and their bargaining representative. The panel found that the prosecutor is a coemployer with the county, as a result of the prosecutors' appointment/tenure statute. We agree.

The pertinent provisions of the statute are:

> The prosecuting attorney of any county is hereby authorized and empowered to appoint an assistant prosecuting attorney, by and with the consent of the circuit judge of the judicial circuit in which such county may be situated, which appointment shall be in writing and filed with the clerk of his county. [MCL 49.41; MSA 5.801.]
>
> Any such assistant prosecuting attorney shall hold his office during the pleasure of the prosecuting attorney appointing him, perform any and all duties pertaining to the office of prosecuting attorney at such time or times as he may be required so to do by the prosecuting attorney and during the absence or disability from any cause of the prosecuting attorney, but he shall be subject to all the legal disqualifications and disabilities of the prosecuting attorney, and shall before entering upon the duties of his office take and subscribe the oath of office prescribed by the constitution of this state and file the same with the county clerk of his county. The compensation of any such assistant prosecuting attorney shall be paid by the prosecuting attorney appointing him. [MCL 49.42; MSA 5.802.]

*Developing Labor Law* (2d ed), p 1444 (there are distinctions between "single" and "joint" employers under federal law). By contrast, the county and the prosecutor in this case obviously do not wish to be considered as one employer; the prosecutor seeks approval of his right to be treated as an employer of the APAs only for purposes of bargaining about areas within his control.

No party or tribunal in this case has questioned that the statute, standing alone, gives the prosecutor the authority to appoint, supervise, and terminate APAS. Nor has there been any questioning of the authority of the county, through its board of supervisors, to control the number and remuneration of assistant prosecuting attorneys. Appellant Michigan Council 25, in appealing the Court of Appeals partial reversal on the finding of the prosecutor's coemployer status, expresses confusion about the coemployer claim. It notes:

> [T]he Prosecutor does not object to the County's presence or primary role in the collective bargaining process.
> What, then, does the County mean by its claim that the Prosecutor is a "joint" employer? If that designation means that the Prosecutor is permitted a place at the bargaining table, the Union concedes this to be the case. It is a settled principle of labor relations that both parties to negotiations have the right, without challenge from the other, to select their bargaining team. [Citation omitted.]
> MERC's decision, furthermore, does not hold otherwise . . . . But the Prosecutor was not denied bargaining table participation in this case. By agreement with the County, the Prosecutor chose not to assert his views in negotiations. Accordingly, this is clearly *not* the case to determine the extent of his rights had he requested and the County denied him the opportunity to express his views at the bargaining table. . . .
> The County is therefore apparently claiming that the Prosecutor's purported status as a "joint employer" requires his presence at the bargaining table, and at least with respect to certain undefined "terms and conditions of employment," that presence cannot be waived. . . .

To the contrary, the county does not contend

that the prosecutor's presence *cannot* be waived, but that it was not. For that reason, this case presents more than the question who is on the county's bargaining committee; rather, it asks who has a *right* to be. For that reason, this *is* "the case to determine the extent of [the prosecutor's] rights . . . ."

Although we have had occasion to express ourselves on the identity of *separate* employers, *Wayne Co Civil Service Comm v Bd of Supervisors,* 384 Mich 363; 184 NW2d 201 (1971), we have not had occasion to deal directly with situations such as this where the characteristics of an employer seem to be constitutionally or legislatively allocated to more than a single public entity. Because the PERA does not define the "public employer" who is obligated to negotiate in good faith, MCL 423.210(1)(e), 423.215; MSA 17.455(10)(1)(e), 17.455(15), that statute is not helpful on this point.

The Court of Appeals has had occasion to analyze this question, and a review of its efforts is instructive. Application of the coemployer concept to this case is consistent with that body of precedent.

In *Wayne Co Civil Service Comm v Bd of Supervisors, supra,* the debate was among the board of supervisors, the civil service commission, and the road commission as to who represented the employer in collective bargaining. This Court, without any discussion of a division of employer responsibility or coemployer status, merely held that the civil service commission's responsibilities of classifying and providing other conditions of employment were *"pro tanto"* superseded by the PERA and, that the road commission was a "separate" employer.

We did not, however, accept or reject the Court

of Appeals analysis that had defined the general characteristics of an employer:

> (1) that they select and engage the employee; (2) that they pay the wages; (3) that they have the power of dismissal; (4) that they have the power and control over the employee's conduct. [22 Mich App 288, 294; 177 NW2d 449 (1970).]

The Court of Appeals, in *Wayne Co Civil Service Comm,* took note of the fact that the county road commission had hiring and firing power. It is this definition of employer that the Court of Appeals in the instant case relied upon in finding coemployer status. See *Michigan Council 25, supra,* p 737.

A coemployer must be distinguished from a separate employer, which was the status at issue in *Wayne Co Library Bd v Wayne Co Bd of Comm'rs,* 78 Mich App 240; 259 NW2d 440 (1977). In that case, the library board sought a determination that it was a separate employer of its employees for collective bargaining purposes. The Court of Appeals upheld an MERC opinion to the effect that the board possessed insufficient "indicia of control over library employees to be considered the *sole* employer of them." *Id.,* p 244 (emphasis added). Although the union in the instant case cites *Wayne Co Library Bd,* clearly it is inapplicable, as the prosecutor does not claim to be the only employer of the assistant prosecutors. However, it is interesting to note that the Court, in dictum, "recognize[d], . . . that *the board is 'also an employer of the same employees and entitled to have a representative at the bargaining table* when its employees are the subject of discussion or negotiations.' " *Id.,* p 245, n 3 (emphasis added).

*Capitol City Lodge No 141, FOP v Meridian Twp,* 90 Mich App 533; 282 NW2d 383 (1979), also

attempted to construe "public employer" under the PERA. The issue there was whether the sheriff was an "agent" of the county. Section 10 of the PERA makes that act applicable to "a public employer or an officer or agent of a public employer," MCL 423.210(1); MSA 17.455(10)(1).

The Court of Appeals applied federal case law developed under the National Labor Relations Act definition of "employer." It concluded that the

> utilization of the common-law principles of agency on the Federal level convinces us that the Michigan Legislature, when it enacted PERA, intended the phrase, "agent of a public employer" in § 10 to mean an agent as defined by the common law of agency. [*Id.,* p 538.]

It cited *Wayne County CSC, supra,* and *Local 1518, Council 55, AFSCME v St Clair Co Sheriff,* 77 Mich App 145; 258 NW2d 168 (1977), rev'd on other grounds 407 Mich 1; 281 NW2d 313 (1979), when it observed, in dictum:

> The office of county sheriff is constitutionally created . . ., and the duties and authority of the sheriff are established by statute. . . . *The sheriff and the County Board of Commissioners are joint employers of deputy sheriffs, with the sheriff controlling their appointment and tenure in position,* MCL 51.70; MSA 5.863, *while the county commissioners establish the number of deputies to be employed as well as the compensation levels.* [*Capitol City Lodge,* p 539. Emphasis added.]

The Court ultimately concluded that there was no agency relationship.

> [W]hen a township calls upon the county sheriff to provide special police protection for the township . . . the sheriff's relationship to the township

is that of an independent contractor and the actions of the sheriff are not to be imputed to the township. [*Id.,* p 542.]

The Court of Appeals broached the subject of coemployer status most explicitly in *Local 1518, supra.* The case involved the sheriff's removal statute and § 15 of the PERA, as well as the police and fire compulsory arbitration statute. The Court found that the sheriff in that case was entitled to coemployer status, but it found that he had waived his rights. This Court resolved the question on a different issue.

The Court of Appeals opinion in the instant case relied heavily on its opinion in *Local 1518.* It ruled that *Local 1518* had established the coemployer status of county sheriffs with the county boards of commissioners. It apparently perceived little or no relevant legal distinction between the sheriff in *Local 1518* and the prosecutor in the case at bar.

The relationship between the sheriff in *Local 1518* and the deputy sheriffs is remarkably similar to that shared by the prosecutor and assistant prosecutors. The concurring opinion in *Local 1518* in the Court of Appeals noted that

the sheriff has the constitutionally based responsibility of administering the entire operation of his law enforcement departments, save for the budgetary matters mandated by the county board of commissioners. To facilitate the discharge of that responsibility, the sheriff's input into the collective bargaining process with his deputies is essential. [77 Mich App 152.]

We find that reasoning applicable here.

A Minnesota case, *General Drivers, Local #346 v Aitkin Co Bd,* 320 NW2d 695 (Minn, 1982), is very similar to *Local 1518.* The relevant issue was

whether a sheriff's statutory powers over the discharge of deputies was modified by the Public Employees Labor Relations Act (PELRA) (the Minnesota equivalent of the PERA) and whether those powers could be the subject of a collective bargaining agreement negotiated pursuant to that act. The Minnesota Supreme Court held that the county board was the "sole employer" of deputy sheriffs under the PELRA, and that the PELRA prevails to the extent of any conflict.

The Minnesota sheriffs had apparently argued that they should be considered *coemployers* for the purpose of negotiating a collective bargaining agreement. The court rejected that argument, but, significantly, on the basis of the definition of "public employer" contained in the PELRA. The statute defined employer as "the governing body of a political subdivision or agency or instrumentality thereof *which has final budgetary approval authority.*" Minn Stat, § 179.63, Subd 4 (1980) (emphasis added). The court noted that "[t]he county boards, not the sheriffs, have final budgetary authority." *General Drivers, supra,* p 701.

The court noted that the sheriffs had "advance[d] persuasive policy arguments in favor of being included as co-employers," *id.,* however, it stressed that "[t]he legislative history of the PELRA and the amendments considered following its adoption indicate that the legislature specifically rejected the position advocated by the sheriffs . . . ." *Id.,* p 700. Thus, while the Minnesota court found that the statutory definition of public employer precluded its designation of the sheriff as a "coemployer," it appeared to have endorsed that concept in principle.

The MERC itself has recognized the concept of coemployer. In *St Clair Co Sheriff v Local 1518, AFSCME,* 1976 MERC Lab Op 708, the county

sheriff had refused to sign a collective bargaining agreement governing a unit of detectives, patrol officers, juvenile officers, custodians, clerk typists, and matrons in the sheriff's department, although his undersheriff had been in attendance at three or four of the negotiation meetings. The sheriff claimed that he was not the employer. The MERC held that *both* the board of commissioners and the sheriff were the public employer for purposes of the PERA and were obligated to bargain.

The MERC reasoned that "[i]n view of the various statutory provisions giving the sheriff the right to run the day-to-day operation of the Sheriff Department, *it is clear that a sheriff is in the status of employer of Sheriff Department employees.*" *Id.,* p 712. It "found that the sheriff of any county and the County Commissioners, must act for purposes of collective bargaining as joint employers, both asserting their interests when they arise during collective bargaining." *Id.,* p 713.

The MERC also recognized the coemployer concept in *Kalamazoo Co Bd of Comm'rs v Fraternal Order of Police, Lodge No 98,* 1978 MERC Lab Op 11. It applied *Local 1518, supra,* and found that "[i]f the Sheriff had rights, as the employer or joint employer," *Kalamazoo, supra,* p 24 (emphasis added), he had waived those rights by failing to declare his position.

It would seem that the MERC, in this case, departed from its own precedent and that of the Court of Appeals by relying on *Presque Isle Co Bd of Comm'rs v Michigan Council 25, AFSCME,* 1978 MERC Lab Op 1309. That case involved the formation of a nonsupervisory bargaining unit of county employees. The county argued that each office—the clerk, treasurer, and registrar of deeds—should be considered as separate and distinct bargaining units from the remaining county employees. Each

of those elected offices is authorized by statute to appoint deputies, and the county relied on that statutory authority.

Obviously, the establishment of bargaining units is a different matter and not necessarily dependent upon the allocation of employer responsibilities. The bargaining unit is not in dispute in this case.

We are satisfied that the Court of Appeals has established sound precedent for the recognition of a coemployer status in collective bargaining. The coemployer concept is especially useful in the historically fragmented power structure of county government. When separately elected constitutional officers, with unique law enforcement powers, are given statutory authority to hire, manage, and terminate the employment of their assistants, such obvious employer criteria are not to be lightly swept away under the guise of collective bargaining inconvenience.

Moreover, the use of coemployer status does not appear to impose an undue burden on the collective bargaining process. It has not been argued to us, nor do we find any such concerns in our own perusal of the PERA, that collective bargaining for public employees would be impaired or impeded when the representative of a bargaining unit is required to bargain with more than one person or officer, when necessary to reach agreement on both economic and conditions of employment issues.

The remaining aspect of this issue is the contention of the union that, to the extent that it grants the prosecutor employer status, the appointment/ tenure statute conflicts with, and therefore is superseded by, the PERA. In pursuit of that argument, the union cites pertinent sections of the PERA. Section 10(1)(e) provides:

It shall be unlawful for a public employer or an officer or agent of a public employer

\* \* \*

to refuse to bargain collectively with the representatives of its public employees, subject to the provisions of section 11. [MCL 423.210(1)(e); MSA 17.455(10)(1)(e).]

Section 11 of the PERA requires that

[r]epresentatives designated or selected for purposes of collective bargaining by the majority of the public employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the public employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment, and shall be so recognized by the public employer . . . . [MCL 423.211; MSA 17.455(11).]

Finally, § 15 of the PERA reiterates the public employer's duty to bargain, and defines collective bargaining:

A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees *to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment,* or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require

the making of a concession. [MCL 423.215; MSA 17.455(15). Emphasis added.]

The union cites *Local 1383, Int'l Ass'n of Fire Fighters v City of Warren,* 411 Mich 642; 311 NW2d 702 (1981), in which the city agreed to a collective bargaining agreement containing promotion and seniority provisions that it then sought to avoid by noting that those conditions of employment were subject to a civil service regulation enacted by the city pursuant to statutory authority. This Court found a conflict, which was resolved in favor of the PERA.

We think that the Court of Appeals here correctly distinguished *Local 1383* in finding no conflict between the PERA and the prosecutors' appointment/tenure act. The issue in *Local 1383* was not whether the civil service commission was a coemployer and should have bargained together with the fire department, but whether the civil service commission could, without bargaining, continue to unilaterally set seniority and promotion policy.

The union cites a line of cases in accord with our judgment as set forth in *Local 1383:*

> This Court has consistently held that PERA prevails over conflicting legislation, charters, and ordinances in the face of contentions by cities, counties, public universities and school districts that other laws or the constitution carve out exceptions to PERA. [*Id.,* p 655.]

The *Local 1383* Court relied upon various PERA conflict cases: *Central Michigan Univ Faculty Ass'n v Central Michigan Univ,* 404 Mich 268; 273 NW2d 21 (1978); *Pontiac Police Officers Ass'n v Pontiac (After Remand),* 397 Mich 674; 246 NW2d 831 (1976); *Rockwell v Crestwood Bd of Ed,* 393

Mich 616; 227 NW2d 736 (1975); *Eastern Michigan Univ Bd of Control v Labor Mediation Bd,* 384 Mich 561; 184 NW2d 921 (1971); *Wayne Co Civil Service Comm, supra; Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487; 233 NW2d 49 (1975), lv den 395 Mich 756 (1975). None of these cases, however, involved the issue presented here—whether the PERA precludes the need to bargain with more than one employer.[3]

Council 25's misperception of this issue is highlighted by its assertion that "to accept the County's argument means that the Prosecutor's Removal Statute removes a mandatory subject of bargaining from the County's bargaining obligation[,] . . . [which is] what this Court has rejected in all of the PERA pre-emption cases." (Citing *Local 1383, supra,* and *Pontiac Police Officers Ass'n, supra.*) In fact, the county and the prosecutor

[3] The PERA preemption cases fall into several categories, none of which is particularly analogous to the instant case.

As noted above in regard to *Wayne Co Civil Service Comm, supra,* some involve the question who or what is a public employer. See, e.g., *Univ of Michigan Regents v Employment Relations Comm,* 389 Mich 96; 204 NW2d 218 (1973); *Eastern Michigan Univ Bd of Control, supra.* Clearly, this case is distinguishable, in that the prosecutor does not claim *not* to be a public employer. He merely claims his right to be a co-public employer and to assert his statutory rights as an employer at the bargaining table.

Other preemption cases address the issue of what constitutes a mandatory subject of bargaining. See *Central Michigan Univ Faculty Ass'n, supra* (reappointment, retention, and promotion criteria are "other terms and conditions of employment" and are mandatory subjects of collective bargaining); *Pontiac Police Officers Ass'n, supra* (grievance and other disciplinary procedures are "other terms or conditions of employment" and mandatory subjects of collective bargaining; *Detroit Police Officers Ass'n, supra.* The prosecutor does not dispute the fact that tenure is a condition of employment and a subject of bargaining, he merely asserts his statutory right to retain his full authority in that regard.

Finally, *Rockwell, supra,* like *Local 1383,* was a case involving actual conflict between the terms of the PERA and another statute, the teacher tenure act. That case is appropriately distinguished by noting that the prosecutor here does not wish to avoid a mandate of the PERA, but seeks to retain his statutory authority while complying with the PERA collective bargaining provisions.

concede that tenure is a condition of employment and that the PERA requires the prosecutor to bargain on the tenure issue.

The MERC also miscast the issue, when it said:

> Moreover, we have uniformly rejected the arguments of other law enforcement departments of county government that they have statutory sovereign authority to hire and fire which supersedes the terms of a collective bargaining agreement. We have held that they are bound by those agreements, and must act within the confines of the bargaining duty imposed upon them under PERA. *Kalamazoo [Co Bd of Comm'rs],* 1978 MERC Lab Op 11; *St Clair Co Sheriff,* 1976 [MERC] Lab Op 708. We find no justification in the statutes or the Constitution of this State to depart from this reasoning for the benefit of the law prosecuting department of county government.

Again, we do not have here a situation where a coemployer bargained away some of its authority and now claims that it is not bound by the contract because of a statutory reservation of authority. Rather, we have a statutory grant of authority to a public employer, who recognizes its obligation to bargain collectively under the PERA and claims readiness to do so, but protests that the PERA should not be read as giving its authority to another entity.

We find no conflict or repugnancy between the PERA and the finding of the circuit court that, in the absence of a waiver, the prosecutor is not bound by an arbitration clause to which he was, in effect, not a party.

C

On the question of waiver, the trial court found:

[T]he Prosecuting Attorneys did claim they should negotiate with the defendant bargaining agent and sought but were denied intervention. Further, no waiver, consent or acquiescence by the Prosecuting Attorney to the contract provisions regarding tenure exists. Under these factual circumstances the defendant Sharon Mormon Parrish cannot claim arbitration rights under a contract to which the Prosecuting Attorney was not a party, and who indeed always asserted his right to control tenure of assistant prosecuting attorneys.

The referee and the MERC found that Prosecutor Cleland's failure to send a copy of the February 12, 1981, letter to the union before a tentative agreement was reached constituted a "surrender" of any rights that contradicted the terms of the contract. The MERC found that the prosecutor "knowingly stay[ed] away from negotiations when he could have asserted his claim . . . ."

A brief retracing of the facts relating to waiver is in order. In April of 1977, the APAs began a dialogue with the union stating in a letter their unique duties and the fact that they "served purely at the pleasure of the elected Prosecutor." A similar letter advised the county administrator of the APAs disclaimer of representation. In May of 1978, the prosecutor's staff filed their lawsuit seeking decertification, again alleging that they served at the pleasure of the prosecutor.

By June of 1978, the prosecutor's staff had changed their view of union membership and had withdrawn their lawsuit. The county sent the union a letter announcing the resolution of the matter of representation in the bargaining unit. The county's letter, however, indicated some areas of the then-existing contract that had questionable application to the APAs. It noted in particular the fact that the APAs served at the pleasure of the prosecutor.

.

In August of 1980 when the county department heads were notified of the beginning of bargaining for the contract which would replace the existing 1978-80 contract, Prosecutor Deegan wrote to the county, and sent a copy to the union, stating:

> Please be advised that I intend to take an active part in any negotiations which affect the employees of the Prosecuting Attorney's Office. Kindly keep me advised as to the date, time and place of any upcoming contact with any union which may or which claims to represent any of my employees.

In addition, Prosecutor Deegan wrote to a union steward regarding another matter—the filling of a position in the prosecutor's office. In that letter, the prosecutor stated:

> I must also point out again that the present Collective Bargaining Agreement does not bind or affect in any way the hiring, etc., practices of my office. I find this to be the case not because I have any opposition to the Agreement itself (I don't), nor because I oppose collective bargaining itself (I don't . . . in fact I intend to take an active part in any necessary upcoming bargaining which affects my office). But rather, I find myself not bound by the present Agreement simply because I took no part in its formation, negotiation, or execution, nor did I authorize anyone else to do so for me.

Prosecutor Deegan was neither invited to nor did he attend any of the negotiations.

Upon succeeding Prosecutor Deegan on January 1, 1981, Prosecutor Cleland, on February 12, 1981, wrote a similar letter to the County Administrator for St. Clair County that referred to the August, 1980, letter of Prosecutor Deegan in which he requested notice of negotiations and expressed his intention to participate in them. Because the con-

tract negotiations were in a sensitive state, this letter was not sent to the union until the day before ratification.

On this issue, we also have not previously spoken. However, the Court of Appeals and the MERC have.

In *Local 1518, supra,* where the sheriff in a factually similar case wished to avoid arbitration over the dismissal of a deputy on the basis of his statutory authority over the tenure of his staff, the Court of Appeals held:

> The testimony in this case shows the defendant sheriff was well aware that a contract was being negotiated between the representatives of his employees and the board of commissioners. During the period of time in which the contract was being negotiated, the sheriff *had some conversation about the contract with the attorney* employed by the board of commissioners to be its negotiator. The sheriff made *no claim at that time that the representatives of the employees were negotiating with the wrong party.* [*Id.,* p 150. Emphasis added.]

The MERC cases also provide some guidance as to what it thinks constitutes waiver. In *Lake Co Sheriff v Fraternal Order of Police,* 1981 MERC Lab Op 1, the sheriff's refusal to process four grievances filed on behalf of deputy sheriffs who were terminated when a new sheriff took office was at issue. The MERC found waiver, primarily on the basis of the sheriff's awareness of and involvement with negotiations. The sheriff in that case had personally attended one or two of four negotiating sessions and had sent his undersheriff to attend the remainder in his behalf.

Likewise, in *Kalamazoo Co Bd of Comm'rs, supra,* the sheriff was found to have been asked to participate in negotiations, but "of his own choos-

ing failed to intervene in the bargaining . . . ."
*Id.*, p 17. The MERC applied the Court of Appeals
opinion in *Local 1518* and found the sheriff bound
by the contract. The referee found that the sher-
iff's actions in that case had *misled* the county and
the union to their detriment. *Id.*, p 24. The referee
considered the fact that

> the sheriff in the past as a deputy had negotiated
> . . . and in the past under previous contracts had
> respondend [sic] to grievances without questioning
> the validity of the collective bargaining agreement.
> [*Id.*]

We note, however, that the sheriff in *Kalamazoo
Co* testified that he had asserted a neutral position
as to negotiations because, in that

> he could not negotiate monetary things[,] he would
> be of no benefit . . . unless it got into management
> or rights that are "protected by law by the sher-
> iff." [*Id.*, p 21.]

Thus, the MERC found waiver in *Kalamazoo Co*
despite some evidence of a reservation of rights.

We think on the facts presented there is ample
uncontradicted evidence that the county and the
union were well-advised that there were employer
prerogatives statutorily vested in the prosecutor,
that the prosecutor did not intend to surrender
them to any other entity of county government,
and that he professed a desire to bargain over
them with the representatives of his staff.

In order to determine whether a waiver never-
theless occurred in this case, we think it best to
answer two questions. Who has the burden of
carrying the initiative of collective bargaining, and
what effect does the change of prosecutors in the

midst of bargaining have upon the conditions of waiver?

In this situation, the employer is not obligated to enter negotiations without a request to bargain from the employees or their representative. See *NLRB v Columbian Enameling & Stamping Co,* 306 US 292, 297; 59 S Ct 501; 83 L Ed 660 (1939); *Local 586, Service Employees Int'l Union v Union City,* 135 Mich App 553; 355 NW2d 275 (1984). The PERA makes it an unfair labor practice for the employer "to *refuse* to bargain collectively with the representatives of its public employees." MCL 423.210(1)(e); MSA 17.455(10)(1)(e) (emphasis added). It does not require the employer to initiate bargaining, but it prohibits the employer from refusing. There is no evidence that the union here requested the prosecutor to bargain. We therefore conclude that the MERC's finding of a waiver because the prosecutor did not "actively participate" in bargaining and "knowingly stayed away" placed a burden on the employer-prosecutor that has no basis in law.

Because the responsibility to bargain is usually triggered by a union's request to the employer, the absence of such a request made to a coemployer could only result in a waiver when waiver is express or implied. Waiver may be implied by acquiescence that would reasonably lead the other bargaining parties to believe that an employer considered himself to be represented by another employer and ultimately to be bound by the agreement struck by the other participating parties.

We agree with the Court of Appeals that Prosecutor Deegan did not waive his coemployer prerogatives. Prosecutor Deegan did not directly authorize the county to bargain over his employer prerogatives, nor did he lead anyone to conclude that he acquiesced in such an occurrence. In fact, he

explicitly stated and communicated a contrary intent. Nearly all of Prosecutor Deegan's communications concerning his readiness to bargain, as well as most of the assertions by the APAs, the county, and the successor prosecutor, reserving the prosecutor's statutory prerogatives, were unacknowledged by the collective bargaining agent.

We disagree, however, with the Court of Appeals conclusion that Prosecutor Cleland, by withholding until the last minute his letter to the union, waived his employer prerogatives. When the collective bargaining in question began, Prosecutor Deegan was in office. When his chief assistant, Mr. Cleland, became prosecutor in the midst of the negotiations there was nothing said or done by Prosecutor Cleland that would lead the parties to the bargaining to believe that there was a sudden shift in the position of the prosecutor's office.

We note with interest the observation of the MERC, in *Lake Co Sheriff, supra,* when it upheld its referee's finding that

> in public employment the public body or entity generally continues with merely a change in the officeholder or governing body of the public employer at periodic election intervals. [*Id.,* p 20.]

The referee in *Lake Co Sheriff,* had held that

> a successor sheriff is bound by the same collective bargaining agreement that bound his predecessor, even though the predecessor had refused to sign the agreement. As far as his duties and responsibilities are concerned, and his rights and obligations to the office in question, the successor sheriff is in a sense the alter ego of his predecessor, and he should stand in no better position than his predecessor in regard to his labor relations responsibilities. [*Id.*]

We conclude, in view of the fact that there was no expression of waiver or acquiescence by Prosecutor Cleland, that the events surrounding his communication restating his predecessor's policy were irrelevant to this issue. Thus, the prosecutor retained his rights as coemployer to bargain on the issue of the tenure of his employees.[4]

IV

We find no error in the view of the Court of Appeals that the evidence did not substantiate the MERC's unfair labor practice charge against the county under § 10(1)(e) of the PERA. There was a genuine dispute over the arbitrability of the termination of Sharon Parrish which was timely tested in good faith in what has subsequently been determined to be the proper forum. We see no further merit in the plaintiff union's arguments on this issue.

### CONCLUSION

We reverse the Court of Appeals judgments in all respects except as to their reversal of the unfair labor practice. We accordingly reinstate the judgment of the circuit court.

WILLIAMS, C.J., and LEVIN, CAVANAGH, BOYLE, and RILEY, JJ., concurred with BRICKLEY, J.

ARCHER, J., took no part in the decision of this case.

---

[4] The parties have raised an underlying question related to the waiver issue: Was Sharon Parrish's grievance covered by the 1978-80 contract or the later contract? The parties dispute whether Ms. Parrish's discharge occurred December 31, 1980, or January 1, 1981. The Court of Appeals found the grievance to be governed by the 1980-81 contract. We find it unnecessary to resolve this issue, in light of our analysis to the effect that Prosecutor Deegan's assertion of his employer rights remained effective through the critical early months of Prosecutor Cleland's tenure. Thus, regardless of which contract governed, there was no waiver.