Carol CONKLIN, Plaintiff-Appellee,

v.

Leo E. LOVELY; Joe W. Wakeley;
and John Huss,
Defendants-Appellants.

No. 86-1607.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 2, 1987.

Decided and Filed Dec. 3, 1987.

Ronald G. Acho (argued), Cummings, McClorey, Davis, and Acho, P.C., Livonia, Mich., Gail P. Massad, for defendants-appellants.

Donald B. Greenspon (argued), Greenspon, Scheff & Washington, Detroit, Mich., for plaintiff-appellee.

Before KEITH, MILBURN and NORRIS, Circuit Judges.

MILBURN, Circuit Judge.

Plaintiff-appellee Carol Conklin filed an action under 42 U.S.C. §§ 1983 and 1985(3) against defendants-appellants alleging that she was discharged from her position as a county employee because of her political activities and in violation of her First Amendment rights. After the district court overruled the defendants' motion for a summary judgment, the case proceeded to trial, and a jury verdict was rendered in favor of the plaintiff in which she was awarded $40,000.00 in compensatory damages for back wages. Subsequently, the district court ordered the plaintiff reinstated and awarded attorneys' fees against the defendants under 42 U.S.C. § 1988. For the reasons that follow, we affirm the district court with respect to all issues raised

by the defendants with the exception of attorneys' fees. We remand the issue of attorneys' fees for findings as to the amount and necessity of a risk-multiplier in the present case.

## I.

Plaintiff was hired by Crawford County, Michigan ("the County"), in July 1977, as a clerk. Two years later, plaintiff was laid off but was subsequently rehired in June of 1980. At that time, plaintiff was assigned a "split shift," working half-time for defendant County Clerk Leo Lovely ("Lovely") and half-time for defendant County Treasurer Joseph Wakeley ("Wakeley"). At no time was plaintiff an employee of defendant John Huss ("Huss").

During the spring and summer of 1980, the County held an election. Defendants Wakeley and Lovely ran for re-election and won.[1] Both Wakeley and Lovely ran as Republicans. Defendant Huss ran for the office of County Prosecuting Attorney against the incumbent, Alton Davis. Mr. Davis, a Democrat, was eventually defeated by Huss, who also ran as a Republican.

Plaintiff was active in campaigning for Mr. Davis. She placed a sticker on her automobile supporting Mr. Davis and otherwise openly participated in the campaign against defendant Huss. Plaintiff alleged that as a result of her activities, she was at one point told by Huss, "paybacks are hell."

On December 1, 1980, plaintiff was discharged from her position. She testified that she received two telephone calls that evening, one from Wakeley and one from Lovely. T. Tr. at 319. Wakeley, plaintiff testified, stated when asked the reason for her termination, "I can't tell you, but I have to fire you." Id. Lovely stated, "I can't tell you, you're just fired." Id. at 319–20. The evidence further showed that

Huss, Wakeley and Lovely had privately discussed the termination on November 30, 1980. T. Tr. at 64 (testimony of Lovely).

Bill Borchers, Equalization Director of Crawford County, also testified in plaintiff's behalf. He stated that after he learned of plaintiff's discharge, he asked Lovely why plaintiff was fired. Lovely replied that there was nothing he could do about it, as the decision came from a higher authority than him. T. Tr. at 160.

Plaintiff claimed she was terminated because of her political support for a Democrat, Mr. Davis. The defendants, however, contended that plaintiff was fired for poor work performance.

On March 26, 1981, plaintiff filed an action in the district court claiming her First and Fourteenth Amendment rights under the United States Constitution were violated, and that she was entitled to recovery under 42 U.S.C. § 1983. Joined as defendants were plaintiff's former employers, Lovely and Wakeley. Also joined were Mr. Huss, recently elected Prosecuting Attorney, and the Board of Commissioners for the County.[2] Later, by leave of the district court, plaintiff amended her complaint and added as grounds for recovery: (1) 42 U.S. C. § 1985(3), which imposes liability on those conspiring to deprive any person of equal protection of laws; and (2) *Toussaint v. Blue Cross and Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), which establishes a cause of action in Michigan for employees terminated in violation of their contractual rights.

Defendants responded by filing a motion for summary judgment on each of plaintiff's three claims. The district court granted defendants' motion as to plaintiff's *Toussaint* claim but overruled the motion as to plaintiff's claims under 42 U.S.C. §§ 1983 and 1985(3). Plaintiff does not appeal the summary judgment order as to

---

1. Defendants Wakeley and Lovely had been at their positions since 1972 and 1947, respectively. Evidently, defendant Lovely has since retired as County Clerk. *See* T. Tr. at 36. Lovely testified that in thirty-four years as County Clerk, plaintiff was the only deputy clerk he ever discharged. T. Tr. at 40.

2. At the close of plaintiff's case, defendants moved for a directed verdict. The district court granted the motion only as to the Board of County Commissioners. The plaintiff does not appeal this ruling, and, accordingly, the Board is not a party to this appeal.

her *Toussaint* claim. Defendants argue they were entitled to summary judgment on all of plaintiff's claims.

Trial commenced on August 2, 1985. During the trial, defendants objected to the testimony of Ms. Beth Money, a former employee of defendant Huss, who claimed she was also discharged in retaliation for her support for Huss' opponent, Mr. Davis. The district court, however, found the testimony admissible. Defendants also attempted to offer evidence that they allege bears on plaintiff's failure to mitigate her damages, but the district court excluded this evidence. The defendants appeal these evidentiary rulings.

The jury returned its verdict on August 19, 1985. By written interrogatories, the jury found as follows: (1) that defendant Lovely discharged plaintiff because of her political support for Mr. Davis, (2) that defendant Wakeley discharged plaintiff because of her political support for Mr. Davis, (3) that defendant Huss conspired together with either Wakeley or Lovely to discharge plaintiff for her support of Mr. Davis, and (4) that plaintiff had sustained compensatory damages for back wages in the amount of $40,000.00. The district court entered judgment against the defendants on August 20, 1985.

Defendants moved for judgment notwithstanding the verdict (JNOV), arguing that the judgment was against the great weight of the evidence and raising again the aforementioned evidentiary issues. The district court denied the motion. Plaintiff's attorney made motions for costs and attorneys' fees under 42 U.S.C. § 1988 and for reinstatement of plaintiff to her former position. The district court granted plaintiff's motions.

## II.

### A.

Defendants first argue that their motion for summary judgment on plaintiff's claim under section 1983 should have been granted. We disagree.

A motion for summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has recently stated: "The inquiry [is] whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the United States Supreme Court held that a nonpolicymaking employee may not be terminated solely on the grounds of political affiliation. Such terminations, the Supreme Court reasoned, "severely restrict political belief and association." *Id.* at 372, 96 S.Ct. at 2689. It has, however, been held that patronage dismissals are constitutionally permissible where, "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980). Additionally, if an employee is discharged because of expression which is *not* of a public concern, there is no First Amendment violation. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

An individual claiming he or she has been discharged in violation of the First and Fourteenth Amendments must, however, show her discharge was *caused* by her political activities. *See Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In *Mt. Healthy*, the Court adopted a test for determining whether an employee's discharge was causally related to his or her political activity. The Court stated plaintiff must show her constitutionally-protected activity was a "substantial" or "motivating" factor behind the decision to terminate. *Id.* at 287, 97 S.Ct. at 576.

In the present case, defendants argue that plaintiff has failed to raise a genuine issue on this point. The question of what actually motivated plaintiff's discharge may, of course, be determined by circum-

stantial evidence. *See Rosaly v. Ignacio,* 593 F.2d 145, 149 (1st Cir.1979) ("We acknowledge that circumstantial evidence may be used to show discriminatory motive in a patronage dismissal case."). In the present case, we hold that there was presented to the district court sufficient evidence, although admittedly circumstantial, of a patronage dismissal that a genuine issue of fact was raised.

The plaintiff in this case had an exemplary employment record. T. Tr. at 88. She was never reprimanded or criticized for her work although at the time she was discharged, she was a probationary employee.[3] She had worked for the County in the past, and her good work habits were known to her supervisors. Indeed, after her layoff in 1979, she was rehired by defendants Wakeley and Lovely.

Also, the statement from defendant Huss that "paybacks are hell" is evidence of an improper motive. Defendants contend this statement was made in the unrelated context of labor negotiations. The plaintiff, however, argued, and evidently the jury agreed, that this statement referred to the treatment plaintiff would receive for her support of Huss' opponent, Mr. Davis.

There is also the testimony of Ms. Beth Money which indicates that she, too, was discharged for her political activities. The defendants argue that this testimony should have been excluded as irrelevant under Fed.R.Evid. 401. Defendants also argue that the probative value of the testimony is outweighed by its prejudicial effect and therefore should have been excluded

under Fed.R.Evid. 403. As will be seen below, we conclude that this testimony was admissible. Further, we hold that the district court permissibly relied on Ms. Money's affidavit to the same effect in overruling defendants' motion for summary judgment.

Our conclusion that defendants' motion for summary judgment was properly overruled on plaintiff's section 1983 claim supports our view that defendants' motion for JNOV was also properly denied.[4] A motion for JNOV, like one for a directed verdict, should be granted if, "reasonable minds could only come to a conclusion against the non-movant." *Littlejohn v. Rose,* 768 F.2d 765, 770 (6th Cir.1985), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986). In making this determination, "neither the credibility or weight of the evidence should be considered." *Id.* In the present case, we hold that a reasonable jury could have found for the plaintiff. This holding is based on the testimony which has been noted above and was presented at trial in the district court. Viewing this evidence in the light most favorable to the plaintiff, it supports plaintiff's theory that her discharge was motivated by her political activity.

**B.**

The defendants also argue that summary judgment should have been granted in defendants' favor on plaintiff's claim under 42 U.S.C. § 1985(3). Section 1985(3) states in relevant part:

---

**3.** We note that her status as a probationary employee does not negate her constitutional protection under the First or Fourteenth Amendments. *See Rankin v. McPherson,* — U.S. ——, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987) ("Even though [plaintiff] was merely a probationary employee, and even though she could have been discharged for any reason ... she may nonetheless be entitled to reinstatement if she was discharged for exercising her constitutional right to freedom of expression."). *See also Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

**4.** Recently the Supreme Court has stated that the standard for summary judgment "mirrors" the standard for a directed verdict, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986), which is identical to the standard for a motion for JNOV. "'The primary difference between the two motions is procedural; summary judgment motions are usually made before the trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted.' In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* 106 S.Ct. at 2512 (quoting *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745 n. 11, 103 S.Ct. 2161, 2171 n. 11, 76 L.Ed.2d 277 (1983)) (citation omitted).

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

In *United Bhd of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Supreme Court held that four elements must be proved by a plaintiff to succeed under section 1985(3). These are:

(1) a conspiracy; (2) for purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Id.* at 828–29, 103 S.Ct. at 3355–56 (construing *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). The defendants do not raise an issue with the first, third, and fourth elements, but argue that the second element has not been met in the present case. This second element, defendants argue, "not only must have as its purpose the deprivation of 'equal protection of the laws, or of equal privileges ...,' but also must be motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspiracy.'" *Carpenters,* 463 U.S. at 829, 103 S.Ct. at 3356 (quoting *Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798).

In *Carpenters,* the plaintiffs claimed that the defendants conspired against their rights under the First Amendment of free association and were liable to plaintiffs under section 1985(3). Plaintiffs were employees of a construction company that regularly hired nonunion workers. The company contracted with the Department of the Army to perform certain construction work in Port Arthur, Texas. When the company started their work in Port Arthur, several of the company's nonunion employees were threatened by union workers. On January 17, 1975, the plaintiffs' nonunion employees were assaulted and beaten on the job site. They brought an action against the union local as well as several individuals claiming a conspiracy existed among the defendants to deprive plaintiffs of their First Amendment rights.

The Court of Appeals for the Fifth Circuit agreed that a conspiracy existed, and found that the conspiracy was aimed at depriving the plaintiffs' nonunion employees of their First Amendment association rights. The court held no state action was necessary to impose liability under section 1985(3). Additionally, the court held section 1985(3) was not restricted to conspiracies motivated by racial animus.

The Supreme Court reversed. *Carpenters,* 463 U.S. at 830, 103 S.Ct. at 3357. The Court noted that there were two grounds for its decision. First, the Supreme Court rejected the court of appeals' holding that no state involvement was necessary to make out a section 1985(3) claim under the circumstances. *Id.* at 830, 103 S.Ct. at 3357. The Court reasoned that by its very terms, and as incorporated by the Fourteenth Amendment, the First Amendment only prohibits actions having state involvement. The Court concluded that wholly private conspiracies to violate the First Amendment protections are not actionable under section 1985(3). *Id.* at 833, 103 S.Ct. at 3358.

Second, the Supreme Court held section 1985(3) does not reach conspiracies "motivated by bias towards others on account of their *economic* views...." *Id.* at 837, 103 S.Ct. at 3361 (emphasis in original). It

found that the plaintiffs' nonunion employees constituted an economic class only and hence were not protected by section 1985(3). The Court recognized that the court of appeals had held the section reaches "conspiracies other than those motivated by racial bias, ..." yet stated it "did not affirm" that view. *Id.* at 835, 103 S.Ct. at 3359.

Whether section 1985(3) was intended to reach anything *other* than racial animus is a "close question" which the Supreme Court in *Carpenters* did not answer. *Id.* at 835, 103 S.Ct. at 3359. Defendants in the present action argue section 1985(3) extends only to conspiracies with a racial animus. In our view, however, their reliance on *Carpenters* is misplaced. That case can be cited only for the proposition that section 1985(3) does not reach conspiracies motivated by bias based on economic views. *Id.* at 837, 103 S.Ct. at 3360. In fact, the Supreme Court itself limited its holding by stating: "Even if this section must be construed to reach conspiracies aimed at any class or organization on account of its *political* views or activities, ... we find no convincing support in the legislative history for the proposition that the provision was intended to reach conspiracies motivated by [bias based on economic views]." *Id.* (emphasis supplied).

In the present case, plaintiff claims the conspiracy against her was based on her political views. Admittedly, *Carpenters* raises doubts about the legitimacy of plaintiff's claims, but *Carpenters* does not reject plaintiff's claims either on its facts or in its holding.

This circuit has, however, expressly accepted plaintiff's interpretation of section 1985(3). In *Cameron v. Brock*, 473 F.2d 608 (6th Cir.1973), we held that, "§ 1985(3)'s protection reaches clearly defined classes, *such as supporters of a political candidate.*" *Id.* at 610 (emphasis supplied). *See also Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir.), *cert.*

*denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed. 2d 258 (1975). Therefore, *Cameron* is controlling in the present case.

We recognize other circuits post-*Carpenters* have restricted section 1985(3) to conspiracies directed towards racial classes. *See Grimes v. Smith*, 776 F.2d 1359 (7th Cir.1985); *Brown v. Reardon*, 770 F.2d 896 (10th Cir.1985); *Harrison v. KVAT Food Management*, 766 F.2d 155 (4th Cir.1985). We, however, are not writing on a clean slate, but operate under the familiar rule that one panel of this court may not overrule the decision of a prior panel unless an inconsistent decision of the United States Supreme Court requires modification. *Salmi v. Secretary of Health & Human Services*, 774 F.2d 685, 689 (6th Cir.1985). As *Carpenters* leaves open the question, we are bound by *Cameron,* and accordingly hold that the district court properly denied defendants' motion for summary judgment on plaintiff's section 1985(3) claim.[5]

The defendants argue that even if summary judgment should not have been granted, their motion for JNOV on plaintiff's conspiracy claim should have been granted because there was but one reasonable conclusion as to the verdict: no conspiracy existed between the defendants. We affirm the district court's denial of defendants' motion for JNOV.

Two facts taken together lead us to the conclusion that a reasonable jury could have found a conspiracy existed to deprive plaintiff and those in a similar position (*i.e.,* county employees supporting the Democratic candidate) of their First Amendment rights. First, the testimony of Ms. Beth Money that Huss told her she was being terminated because of her political activity shows an intent or motive, at least by defendant Huss, to engage in patronage dismissals.

Second, the fact that Huss, Wakeley and Lovely met together for the express purpose of discussing plaintiff's termination

5. We note that even if we were to reject the district court's denial of summary judgment on plaintiff's section 1985(3) claim, this would only affect the liability of defendant Huss. The jury by written interrogatories found Wakeley and

Lovely discharged plaintiff because of her political support for Mr. Davis. Huss, on the other hand, was implicated only as a conspirator. Hence, defendant Huss' liability hinges on the conspiracy claim.

after Huss had told plaintiff that, "paybacks are hell," *see* T. Tr. at 64, and that Wakeley and Lovely both indicated they were requested to discharge plaintiff, *see* T. Tr. at 319–20 and 160, is sufficient to allow a jury to conclude that a conspiracy existed against plaintiff on account of her political views. Accordingly, we think the jury was not unreasonable in so concluding.

## C.

■ The defendants appeal the district court's ruling that the testimony of Ms. Beth Money was admissible. Money was hired in June 1980 as a secretary in the County Prosecuting Attorney's office. She worked primarily for Mr. Davis and in the 1980 elections actively campaigned in behalf of Mr. Davis.

After his election victory, defendant Huss discussed with Money her continued employment in the County Prosecutor's office. According to Money, Huss told her he did not want her working for him because Money had supported his opponent. Money testified, "he told me that one way or the other, it didn't matter, that I would not be working for him because I did not support him." T. Tr. at 514.

The defendants argue the testimony should have been excluded as irrelevant. Fed.R.Evid. 401. Money, they argue, was a *policymaking* employee who could be constitutionally discharged based on political affiliations. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Because Money was subject to patronage dismissals, defendants argue, such dismissal was irrelevant to the defendants' intent or motive in discharging plaintiff. Defendants also argue that in any event the testimony's prejudicial effect outweighed its probative value and thus should have been excluded under Fed.R. Evid. 403.

The district court concluded that the testimony was relevant because, in its view, Money was *not* a confidential, policymak-

ing employee and thus was protected from this type of discharge. It therefore reasoned her testimony was relevant to defendants' motive or intent. Balancing the testimony's probative value against its prejudicial effect, the district court also concluded it should not be excluded under Fed.R.Evid. 403.

We hold that the testimony of Beth Money was properly admitted by the district court. We intimate no opinion as to whether she was a policymaking employee who could have been dismissed on the basis of political affiliation. "The determination of status as a policymaker in many cases presents a difficult factual question." *Nekolny v. Painter,* 653 F.2d 1164, 1169 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982). Such a conclusion, however, is not necessary to a finding of admissibility.

The district court reasoned that Money's patronage discharge would be relevant to defendants' motive or intent in engaging in patronage dismissals. We agree. This conclusion remains irrespective of whether Money could herself be constitutionally discharged.

In the present case, it appears plaintiff and Money both performed similar, mainly secretarial tasks, and both were covered by the collective bargaining agreement for the County. Moreover, both plaintiff and Money were hired and fired at approximately the same time, and both campaigned against defendant Huss. In our view, plaintiff and Money were sufficiently comparable that defendants' motive or intent in discharging one would be relevant to their motive and intent in discharging the other.[6] Further, we conclude that the district court acted well within its discretion, *see, e.g., United States v. Tager,* 788 F.2d 349 (6th Cir.1986), in concluding that Money's testimony, while decidedly prejudicial and damaging to defendants, is admissible under Fed.R.Evid. 403.

---

**6.** Additionally, we conclude that Money's testimony was admissible under Fed.R.Evid. 404(b)

as the district court found.

Defendants also contend that they were erroneously prohibited from questioning plaintiff about her mitigation of damages. This relates to the district court's exclusion of plaintiff's corporate tax returns and unemployment compensation. The record, however, establishes that defendants were allowed to introduce evidence on mitigation and that at trial defendants failed to tie this evidence to the mitigation issue.

On the unemployment compensation question, it appears defendants' attorney did not seek to introduce the evidence for the purpose of showing a failure to mitigate as the following discussion took place:

DEFENDANTS' ATTY:

Q. Ms. Conklin, how long did you collect unemployment compensation, ma'am?

A. I believe it was for about three months.

Q. I see.

PLAINTIFF'S ATTY: I would object to the relevancy.

THE COURT: Response?

DEFENDANTS' ATTY: I believe it has already been answered, Your Honor.

THE COURT: Well, I'll see you very quickly. Would you like to come to the side bar please.

(Side Bar Conference at the Bench; on the record)

What is it you're saying, that it's not an offset?

PLAINTIFF'S ATTY: Right, that's what I'm saying.

DEFENDANTS' ATTY: *It was going to credibility but she has already answered anyway.*

THE COURT: *So I understand, but I mean what does that have to do with credibility?*

DEFENDANTS' ATTY: *Well, I was going to show that—our information is she collected longer than that and—*

THE COURT: But what does it have to do—what case does it have to do with? What relevance—if it can't be an offset what relevance is it?

DEFENDANTS' ATTY: *Either to (1) show that she has poor memory or (2), she is not being honest.*

(Side bar conference concluded).

THE COURT: Objection sustained.

J.A. at 257–58 (emphasis supplied). As a general rule, unemployment benefits are not deducted from back pay awards in an unlawful discharge case. *See Rasimas v. Michigan Department of Mental Health,* 714 F.2d 614, 627 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984) (holding that unemployment benefits may never be deducted from a back pay award in a Title VII case). Hence, we conclude the district court properly excluded the evidence on lack of relevancy grounds. Moreover, the district court committed no error in refusing to allow impeachment evidence on a collateral matter.

Defendants were permitted to fully cross-examine plaintiff about outside compensation, including wages, from a corporation named "Bisque and Brush" which plaintiff founded and operated after her discharge. Defendants were, however, prohibited by the district court from causing the corporate tax returns of Bisque and Brush to be admitted. The court ruled the tax returns themselves were not relevant under Fed.R.Evid. 401. J.A. at 266. The defendants argue this ruling prohibited them from establishing a failure to mitigate damages.

The district court's decision to exclude evidence under Fed.R.Evid. 401 should not be reversed unless the decision is an abuse of discretion. *See United States v. Wyers,* 546 F.2d 599, 603 (5th Cir.1977). In our view, the district court's decision in this connection is not an abuse of discretion and, further, even if it were, that would not be a ground for reversal because the court allowed full cross-examination of outside compensation apart from the tax returns.

**D.**

Defendants argue that the district court's order granting reinstatement with restoration of benefits was: (1) improper and, (2) impossible for the defendants to

perform. The defendants first argue that reinstatement should not have been ordered by the district court because it was not awarded by the jury. The jury, by special interrogatory, found that the plaintiff was entitled to $40,000.00. One juror, presumably the foreperson, specifically wrote on the verdict form that the amount was for "back wages only." The plaintiff responds that reinstatement or future damages were not requested by the plaintiff from the jury.

The record reveals that at no time during the course of the trial did plaintiff request an award of future damages. In her complaint, plaintiff did request the alternative relief of reinstatement. Reinstatement is an equitable remedy, and the district court acted properly in awarding it in the present case. See Professional Ass'n of College Educators v. El Paso County Community College, 730 F.2d 258, 268 (5th Cir.), cert. denied, 469 U.S. 881, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984) ("[O]nce the plaintiff establishes that his discharge resulted from constitutionally impermissible motives, he is presumed to be entitled to reinstatement.").

Second, defendants argue they are without authority to reinstate the plaintiff. Only the Board, defendants argue, which was granted a directed verdict, has the power to appoint county employees. The defendants rely on a Michigan Employment Relations Commission decision which held county prosecutors are not joint employers of assistant prosecuting attorneys with the County but that the County itself is the sole employer. That decision, however, as plaintiff points out in her brief, has been overturned by the Michigan Supreme Court. St. Clair Prosecutor v. American Fed'r of State Employees, 425 Mich. 204, 388 N.W.2d 231 (1986). In St. Clair, the Michigan Supreme Court held that county prosecutors, under their statutory authority to appoint deputies, do have authority to appoint assistants and therefore are coem-

ployers with the county. Id. at 231–33, 388 N.W.2d at 243.

Under appointment statutes similar to the one discussed in St. Clair, see Mich. Comp.Laws Ann. §§ 50.63, 48.37 (1967 & 1987 Supp.), the county clerk and county treasurer have authority to reinstate plaintiff even though the Board is no longer a defendant.[7] We therefore reject defendants' argument, at least as it applies to defendants Wakeley and Lovely.

### E.

■ The district court awarded plaintiff attorneys' fees in the amount of $42,487.50 under 42 U.S.C. § 1988. Defendants argue this award is excessive.

Along with plaintiff's attorney's motion for fees, plaintiff's attorney, Donald Greenspon, filed an affidavit in which he stated that the total number of hours expended on the case was 259.75. The district court held that this amount was reasonable, and defendants do not question this holding on appeal. Plaintiff's attorney also stated in his affidavit that the prevailing market rate in the relevant community was $75.00 to $125.00 per hour, and that on individual employment cases, the plaintiff's attorney's own rate was $75.00 per hour. The plaintiff's attorney, however, requested that his rate be enhanced 100% to $150.00 per hour to compensate for the contingent nature of the case. The district court granted attorneys' fees at the enhanced rate, noting, "plaintiff's counsel took the case on a contingency fee basis. Moreover, both the law and the facts were strongly disputed by the defendants. The court finds that $150.00 per hour is a reasonable rate." J.A. at 18.

42 U.S.C. § 1988 provides that the prevailing party in a civil rights action may recover reasonable attorneys' fees. Normally, the lodestar method is utilized whereby the amount of the fee is determined by multiplying the number of hours reasonably expended on the case by the prevailing market rates. Blum v. Stenson,

---

**7.** At oral argument, the defendants' attorney argued for the first time that the defendants' statutory appointment authority does not apply to plaintiff because it only authorizes the appointment of deputies and plaintiff was only a secretary. The record, however, discloses that defendants viewed plaintiff as a deputy prior to discharge. T. Tr. at 39.

465 U.S. 886, 888, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984). In some cases, however, the attorney's fee may be enhanced to reflect the contingent nature upon which the case was taken. In *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980), this court stated:

> Perhaps the most significant factor in these cases which at times renders the routine hourly fee unreasonably low is the fact the award is contingent upon success. An attorney's regular hourly billing is based upon an expectation of payment, win, lose or draw. If he or she will only be paid in the event of victory, those rates will be adjusted upward to compensate for the risk the attorney is accepting of not being paid at all. Some cases under the civil rights statute, those in which the facts are strong and the law clear, pose little risk of losing, and the attorney's normal billing rate will be adequate compensation. Others, in developing areas of law or where the facts are strongly disputed, will require substantial upward adjustment to compensate for the risk. We also note that in a long and complicated law suit ... only a portion of the time expended can be reasonably regarded as contingent; once liability is established the attorney is assured of compensation for establishing the appropriate remedy, monitoring the decree, and recovering his fee. The contingency factor is not a 'bonus' but is part of the reasonable compensation to which a prevailing party's attorney is entitled under § 1988.

*Id.* at 638. *See also Kelley v. Metropolitan County Bd. of Educ.,* 773 F.2d 677 (6th Cir.1985).

In *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air,* — U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), a motion for attorneys' fees was brought under section 304(d) of the Clean Air Act, 42 U.S.C. § 7604(d). The Supreme Court noted, however, that the analysis under section 304(d) is the same as that under 42 U.S.C. § 1988. In *Delaware Valley,* the Supreme Court directly confronted "the issue [of] whether, when a plaintiff prevails, its attorney should or may be awarded separate compensation for assuming the risk of not being paid." *Id.* 107 S.Ct. at 3081. Four Justices, Chief Justice Rehnquist, Justices Powell, White, and Scalia, felt the enhanced fee award was not permitted by the attorneys' fees statute. *Id.* 107 S.Ct. at 3080–89. Justices Blackmun, Brennan, Marshall, and Stevens, however, concluded that an upward contingency enhancement is permissible under the attorneys' fees statutes. *Id.* 107 S.Ct. at 3091–3102. Justice O'Connor disagreed with the plurality opinion and concluded that the attorneys' fee statutes do allow for an upward enhancement in contingency fee cases. *Id.* 107 S.Ct. at 3089. She, however, felt that in the case before the court, which involved only a thirty-three per cent enhancement, the district court had not made proper findings of fact.[8] She stated:

> Neither the findings nor the evidence indicate that the large enhancements in this case were necessary to attract competent counsel in the relevant community. Moreover, it is clear that the District Court based the enhancement on 'legal' risks and risks unique to the case. The considerations used by the District Court to justify the enhancement—the 'new and novel issues' raised by the case, and the stubbornness of the defendants—should already be reflected in the number of hours expended and the hourly rate, and cannot be used again to increase the fee award.

*Id.* 107 S.Ct. at 3091 (citation omitted).

· We conclude that in the present case the district court properly considered the contingency nature of the fee in this case; however, the district court did not make the specific factual findings required by both *Northcross* and *Delaware Valley.* Accordingly, we remand to the district

---

**8.** In the present case, it is difficult to determine exactly the enhancement awarded by the district court. If the plaintiff's attorney's normal rates are taken as the benchmark ($75.00 per hour), the increase to $150.00 per hour is one of 100%.

If the amount which the plaintiff stated in his affidavit was the top rate in the relevant community ($125.00 per hour) is considered, then the increase is one of 20%.

**554**

court on this issue for findings of fact as to the amount and necessity of a risk-multiplier.

## III.

For the reasons stated, we AFFIRM the district court in all respects other than on the issue of attorneys' fees under 42 U.S.C. § 1988. We REMAND the case to the district court for findings as to the appropriateness of an enhancement of attorneys' fees in the present case.

ALAN E. NORRIS, Circuit Judge, concurring.

Although I agree with what has been said by the majority, I concur in affirming the judgment against defendant John Huss only because we are bound to follow the decision of a panel of this court in *Cameron v. Brock*, 473 F.2d 608 (6th Cir.1973), even though adherence to the reasoning relied upon by a majority of the members of the Supreme Court in its intervening opinion in *United Bhd. of Carpenters and Joiners, Local 610 v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) would appear to compel a contrary result. *See, e.g., Grimes v. Smith*, 776 F.2d 1359 (7th Cir.1985); *Brown v. Reardon*, 770 F.2d 896 (10th Cir.1985); *Harrison v. KVAT Food Management, Inc.*, 766 F.2d 155 (4th Cir.1985). With this reservation, then, I concur in Judge Milburn's opinion.