949 F.2d 397
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
R & B AIRCRAFT, INC., Plaintiff-Appellant,
v.
ABG AMBULANCE SERVICES, Defendant-Appellee.
 No. 91-5438.
 United States Court of Appeals, Sixth Circuit.
 Dec. 5, 1991.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this diversity action arising from a fire in an airplane hangar, plaintiff R & B Aircraft, Inc. ("R & B") appeals the directed verdict for defendant ABG Ambulance Services, Inc. ("ABG"). On appeal, plaintiff raises the following issues: (1) whether the granting of defendant's motion for a directed verdict at the close of plaintiff's case-in-chief was proper as a matter of law; (2) whether the evidence was sufficient to present the issue of liability to the jury; and (3) whether the governmental fire investigation report, required by the government, should have been admitted into evidence under Federal Rule of Evidence 803(8). For the reasons that follow, we affirm.
 
 I.
 
 2
 Plaintiff R & B, an Ohio corporation which owned an airplane damaged in a fire at a hangar located at the Ashland-Boyd County, Kentucky, Airport, brought this action for damages. The airplane was housed in the hangar for repairs and was extensively damaged. Plaintiff argues that the fire was a result of negligence on the part of defendant ABG, a Kentucky corporation.
 
 
 3
 Defendant ABG rented an office at the hangar on a month-to-month oral lease.[1] The small, one-room office did not have its own rest room. Instead, a rest room was shared by ABG and other occupants of the hangar, including pilots who frequented the hangar. Besides this common rest room, there was a second rest room adjacent to the first which was not accessible to ABG employees. These two narrow rest rooms were located in "a metal lean-to" at the back of the hangar and close to the ABG office. The rest rooms' walls were covered with wood paneling.
 
 
 4
 In the early morning hours of February 25, 1988, a fire broke out at the hangar. At that time, the only people present in the hangar were two ambulance drivers, Paul Meek and Richard Truax, employees of ABG, who were on duty in the event the ambulance service received an emergency call. While watching television in the ABG office, they heard what sounded like loud popping noises. Upon walking down the hall toward the rest rooms to investigate, they saw flames and black smoke. After they were unable to extinguish the fire with a fire extinguisher, they called the fire department which extinguished the fire. Neither of these men was called to testify at the trial.
 
 
 5
 Walter Petot, an arson investigator for the Kentucky State Police, investigated the fire. He testified that the fire began in one of the two rest rooms in the hangar. He found a portable electric heater in one of the rest rooms, and his opinion was that this heater was the most likely cause of the fire. Although he did not know which rest room contained the heater, he testified: "It was the one that contained the water heater, which I believe was adjacent to ABG." He did not examine the electric heater to determine if it had been turned on at the time of the fire, but testified that if the heater was the cause of the fire, then it must have been turned on. Petot did not testify as to who owned the heater, who placed it in the rest room, and, as stated, he could not say whether it had been in use on the night of the fire.
 
 
 6
 Virginia Vanhoose, widow of the owner of ABG, Virgil Vanhoose, testified that ABG had two electric space heaters which were used to keep the ambulances warm. She also testified that occasionally the employees of ABG would bring heaters from home to warm the office, but that she could not recall ever seeing an electric space heater in the common rest room. Virginia Vanhoose was not at the office on a day-to-day basis and had not been to the hangar in the week prior to the date of the fire.
 
 
 7
 As a result of the fire, plaintiff's airplane was alleged to be a constructive total loss. Gary Riley, part owner of R & B, testified that R & B had purchased the aircraft, a twin engine pressurized Baron, for $130,000 in December of 1986, some fourteen months before the fire. Riley also testified that approximately $30,000 had been spent on the airplane for repairs and refurbishing after the airplane was purchased. Riley had no documentation to support his testimony, and did not testify as to the fair market value of the airplane at the time of the fire. Rather, the foregoing was the extent of his testimony on the issue of damages.
 
 
 8
 After the testimony of Riley, Vanhoose, and Petot, in that order, plaintiff closed its proof. Plaintiff offered no proof as to who put a heater in one of the rest rooms or that it belonged to defendant ABG or any of its employees. Defendant ABG moved for a directed verdict. The motion was granted, and the district court thereafter issued a written opinion on its directed verdict, setting forth in detail the basis for its oral ruling from the bench. Judgment for the defendant was entered, and this timely appeal followed.
 
 II.
 A.
 
 9
 We will address plaintiff's issues in reverse order due to the nature of the issues presented. The first issue we will address is whether the district court erred in refusing to admit the fire investigation report into evidence.
 
 
 10
 As we held in Zamlen v. City of Cleveland, 906 F.2d 209 (6th Cir.1990), cert. denied, 111 S.Ct. 1388 (1991), with respect to evidentiary rulings:
 
 
 11
 First, a reviewing court will not reverse such a decision on appeal absent a showing of a clear abuse of discretion. Conklin v. Lovely, 834 F.2d 543, 551 (6th Cir.1987). Second, even if the lower court's decision amounts to an abuse of discretion, it will not be disturbed on appeal if it did not result in a substantial injustice, as "no error in the admission or exclusion of evidence is ground for reversal or granting a new trial unless refusal to take such action appears to the court to be inconsistent with substantial justice."
 
 
 12
 Id. at 215-16 (citations omitted).
 
 
 13
 Plaintiff's argument that the district court abused its discretion in not admitting the fire investigation report and that it was thereby prejudiced is without merit. Plaintiff contends that the report should have been admitted pursuant to Federal Rule of Evidence 803(8)(C) which states in pertinent part that "reports ... of public offices or agencies, setting forth ... in civil actions ... factual findings resulting from an investigation made pursuant to authority granted by law, [are admissible] unless the sources of information or other circumstances indicate lack of trustworthiness." The district court disallowed the report because of its hearsay nature.
 
 
 14
 Thereafter, according to the Joint Appendix and the Supplemental Appendix, plaintiff's counsel sought to introduce the fire investigation report not through arson investigator Petot, who had prepared the report, but through Gary Riley, part owner of R & B. Gary Riley, when asked: "Have you seen this report before today, if you recall?", responded: "I don't recognize it, no." Plaintiff's counsel then attempted to read three items to the jury from the report but was not permitted to do so as the district court sustained defendant's counsel's objection. Before sustaining the objection, however, the court inquired referring to Petot by stating: "Isn't this--isn't he going to be a witness?" In sustaining the defendant's objection, the court stated: "Right now the document is hearsay. Maybe later it might not be. Right now it is."
 
 
 15
 Even assuming arguendo that the district court should have admitted the report, plaintiff has failed to demonstrate that any substantial rights were affected by this alleged error. Petot was allowed to testify in detail concerning information contained in his report, including his opinion about the cause and the origin of the fire. Because plaintiff's "substantial rights" have not been affected, any error, if any was committed by the district court, was harmless. See Zamlen v. City of Cleveland, 906 F.2d 209, 216 (6th Cir.1990), cert. denied, 111 S.Ct. 1388 (1991).
 
 B.
 
 16
 We now turn to plaintiff's argument that the district court erred in granting defendant's motion for a directed verdict.[2] The district court granted defendant's motion on two grounds: (1) Plaintiff failed to prove defendant's liability, and (2) plaintiff failed to prove any damages.
 
 
 17
 The standard of review in an appeal from a directed verdict is de novo. Hersch v. United States, 719 F.2d 873, 877 (6th Cir.1983). The directed verdict standard applied by the district court looked to "the evidence in the light most favorable to the party against whom the motion was made, and [gave] it the advantage of every fair and reasonable inference that the evidence can justify." Rockwell Int'l Corp. v. Regional Emergency Medical Servs., 688 F.2d 29, 31 (6th Cir.1982). The district court noted that granting a "directed verdict is appropriate if there is a complete absence of pleading or proof on an issue or issues material to the cause of action or where there are no controverted issues of fact upon which reasonable men could differ." Id. Plaintiff has not explicitly challenged this standard on appeal, even though a federal court sitting in a diversity case must apply the directed verdict standard of the state whose substantive law governs the action. See e.g., Arms v. State Farm Fire & Casualty Co., 731 F.2d 1245, 1248 (6th Cir.1984).
 
 
 18
 Plaintiff cites a Kentucky Court of Appeals case stating that the non-moving party must present at least a "scintilla of probative evidence capable of inducing conviction in reasonable minds." Wyant v. SCM Corp., 692 S.W.2d 814, 816 (Ky.App.1985). Even if Wyant can be read to indicate that plaintiff is challenging the standard applied by the district court, the federal and Kentucky standards are the same in all material respects. See Wyant, 692 S.W.2d at 816; National Collegiate Athletic Ass'n v. Hornung, 754 S.W.2d 855, 860 (Ky.1988) (citations omitted). Therefore, no error has been committed.
 
 
 19
 Plaintiff argues that it presented enough evidence to send the issue of liability to the jury.[3] However, defendant argues that plaintiff has failed to present any evidence of negligence on the part of ABG. No proof was presented as to who put a heater in one of the rest rooms or that it belonged to defendant ABG or any of its employees.
 
 
 20
 Defendant further argues that plaintiff failed to demonstrate that the electric space heater was the source of the fire. Plaintiff's witness, Walter Petot, testified that the heater was the "most likely" source of ignition, but Petot did not closely examine the heater to see if it was turned on at the time of the fire. Such speculation on the part of plaintiff's witness does not amount to sufficient proof that the heater caused the fire. The highest court in Kentucky has stated:
 
 
 21
 [L]egal causation ... may be established by circumstantial evidence. While reasonable inferences are permissible, a jury verdict must be based on something other than speculation, supposition or surmise. The type of evidence that will support a reasonable inference must indicate the probable as distinguished from a possible cause. There must be sufficient proof to tilt the balance from possibility to probability.
 
 
 22
 Huffman v. SS Mary and Elizabeth Hospital, 475 S.W.2d 631, 633 (Ky.1972) (citation omitted); see Midwestern V.W. Corp. v. Ringley, 503 S.W.2d 745 (Ky.1973).
 
 
 23
 Furthermore, even assuming that the electric space heater found in one of the rest rooms caused the fire, plaintiff has failed to prove that ABG owned or had any control over the heater. The district court stated:
 
 
 24
 No evidence whatsoever was presented to show that plaintiff [sic-defendant] owned, operated, or controlled the electric heater or that the fire originated in the bathroom available to the defendant (as opposed to the adjoining bathroom not available to defendant). Plaintiff argues that these missing pieces of evidence can be reasonably inferred given the facts that: (1) defendant admits using portable heaters in his office and its ambulances; (2) the only people in the building on the night in question were the two employees of defendants; and (3) it was a cold February night and the two employees would undoubtedly want the bathroom to be warm. The question becomes whether these inferences can be reasonably and fairly drawn from the evidence presented.
 
 
 25
 Plaintiff has only demonstrated that there is a possibility that the heater in one of the rest rooms was a heater belonging to defendant or its employees. Plaintiff has failed to show a "scintilla" of evidence that negligence on the part of the defendant was the probable as opposed to the possible cause of the fire by either direct or circumstantial evidence or by eliminating other possible causes. See Midwestern V.W. Corp. v. Ringley, 503 S.W.2d 745 (Ky.1973).
 
 
 26
 "[A] jury verdict must be based on something other than speculation, supposition or surmise." Huffman, 475 S.W.2d at 633. Plaintiff never offered evidence to show that other occupants of the building did not use electric space heaters, or any evidence which would exclude other possibilities. Plaintiff failed to provide any evidence on which a jury could find that negligence on the part of the defendant or its employees proximately caused the fire and has, therefore, failed to demonstrate any basis for defendant's being liable.
 
 C.
 
 27
 Even assuming arguendo that the plaintiff made out a case of liability, plaintiff has utterly failed in its proof of damages. The evidence on damages was limited solely to Gary Riley's testimony that the airplane was "rendered essentially valueless" by the fire on February 25, 1988, that it had been purchased for $130,000 some fourteen months earlier or in December of 1986, and that approximately an additional $30,000 was spent on improvements to the airplane. As earlier stated, Riley had no documentation to support his testimony, and he did not testify as to the fair market value of the airplane at the time of the fire.
 
 
 28
 In Kentucky, the measure of damages for personalty is the difference between the fair market value immediately before and after the accident. McCarty v. Hall, 697 S.W.2d 955, 956 (Ky.App.1985). Riley's testimony was clearly insufficient to show the value of the airplane immediately before the fire. Riley testified as to the purchase price and the cost of improvements made to the airplane, but the airplane was purchased fourteen months before the fire. The fair market value at the time of the fire may or may not have been the same as the purchase price and cost of improvements related by Riley. The airplane may have depreciated during the fourteen months after purchase, and the cost of improvements may not have raised the value by a corresponding amount. Furthermore, there was no testimony as to the value of the airplane after the accident. Riley testified that the airplane was "rendered essentially valueless" indicating that even after the fire when the airplane was a constructive total loss, it may have had salvage value. What the salvage value may have been, if indeed there was any, was never explored.
 
 
 29
 Because the evidence of damages was tenuous at best, the jury would have had no guidance to rely upon in arriving at an appropriate award. "Juries should not be permitted to indulge in speculation and guess work as to the probable damages resulting from an alleged act of negligence where there is no tangible evidence in that respect." Louisville & N.R. Co. v. Lankford, 304 Ky. 192, 195, 200 S.W.2d 297, 298 (1947). Because plaintiff failed to provide any evidence upon which a jury could render a verdict for plaintiff on either the issue of liability or damages, we conclude that the district court did not err in granting defendant's motion for a directed verdict.
 
 III.
 
 30
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 The record is unclear as to who was the other party to the lease. Riverside Aviation and the Ashland-Boyd County Airport are both mentioned as having control of the hangar
 
 
 [2]
 Plaintiff addresses this same argument in two separate issues. However, because both issues address the same question we shall only deal once with this single issue
 
 
 [3]
 Defendant states that res ipsa loquitor was plaintiff's theory. However, plaintiff did not assert res ipsa loquitor in its complaint and does not argue the theory on appeal. Plaintiff's theory is that the heater was left turned on next to a wood panel wall and that this negligence caused the fire to ignite. Plaintiff's Brief at 10. Regardless, assuming arguendo that the electric space heater found in one of the rest rooms was the source of the fire, there was no proof presented at the trial that ABG or any of its employees owned or had full and exclusive control over the heater. Sadr v. Hager Beauty School, Inc., 723 S.W.2d 886 (Ky.App.1987)