**Joe D. PENNYCUFF, Plaintiff,**

v.

**FENTRESS COUNTY BOARD OF EDUCATION, and Homer Lee Linder, Jr., Superintendent of Fentress County Schools Defendants.**

No. 2:98–0059.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 18, 2002.

Charles Hampton White, Jay N. Chamness, Cornelius & Collins, LLP, Nashville, TN, Richard Lee Colbert, Colbert & Winstead, Nashville, TN, for plaintiff.

William Gary Blackburn, Blackburn & McCune, PC, Nashville, TN, Phillips M. Smalling, Byrdstown, TN, for defendants.

### ORDER

WISEMAN, Senior District Judge.

Before the Court are the responses of the parties to the Court's May 9, 2002 order requiring Plaintiff Joe D. Pennycuff to show cause why summary judgment should not be awarded to Defendants in this matter. For the reasons set forth in the accompanying memorandum, summary judgment is GRANTED in favor of Defendants. With no further matters pending, this case is closed.

It is so ordered.

### MEMORANDUM

The Fentress County Board of Education ("the Board") effectively fired Joe D. Pennycuff ("Plaintiff" or "Pennycuff") in March 1998. Pennycuff filed this lawsuit to challenge the validity of his termination. On April 5, 1999, the Court granted Pennycuff partial summary judgment. The Court found that Pennycuff had tenure and that his termination failed to comply with due process requirements. The Court ordered the Board to reinstate Plaintiff and pay him back wages. On September 1, 1999, the Court entered a final judgment after a bench trial, finding that Plaintiff had been fired in retaliation for exercising his First Amendment rights. The Court awarded Plaintiff $25,000 in damages and attorney's fees. The Board appealed the partial summary judgment, as well as the award of attorney's fees.

On August 21, 2001, the Sixth Circuit reversed the Court and remanded the case for reconsideration in light of the decision of the Tennessee Supreme Court in *Bowden v. Memphis Bd. of Educ.*, 29 S.W.3d 462 (Tenn.2000). On remand, this Court denied Plaintiff's motion for partial summary judgment and ordered Plaintiff to show cause why the Court should not grant summary judgment in favor of the Board.

### I. Factual Background

On June 18, 1993, Pennycuff was hired by the Fentress County Board of Education. On June 24, 1993, Board member Freddie Stults made a motion to place Pennycuff as principal of Clarkrange High School for the 1993–1994 school year and the motion carried. After Pennycuff was hired by the Board, he resigned from his position as a tenured teacher in the Oneida, Tennessee school system. During Pennycuff's first year as principal of Clarkrange High School, parents and students complained about him, students staged walkouts, and a petition was circulated detailing the community's complaints regard-

ing his administration and demanding his removal as principal.

During roughly this same time period, pursuant to Chapter 160 of the Tennessee Private Acts of 1994, the Fentress County Board of Education was expanded from five members to ten members effective September 1, 1994. As a result, five new Board positions and two open Board seats were on the ballot for the August 4, 1994 election.[1]

After the election, but before the expiration of the five-member Board's term, the Board held a special called meeting on August 30, 1994. An agenda for the meeting was prepared by Marjorie Wright, then Superintendent of Schools, and provided to Board members on August 29, 1994. There were no matters related to Pennycuff on the agenda, and the local newspaper did not publish notice of the meeting. As the last item of business, however, Freddie Stults, who had been defeated in the election, moved the Board to "transfer" Pennycuff's tenure from the Oneida School System to the Fentress County School System. The motion passed with two affirmative votes, one no vote, and one pass; one Board member was absent.

At the first meeting of the new ten-member Board on September 8, 1994, the minutes of the August 30 meeting were read and approved, with the exception of the transfer of Pennycuff's tenure. The minutes of the September 8 meeting reflect that the transfer was not approved "due to it being illegal." At the end of the meeting, the Board agreed to ask Chuck Cagle, the Board's attorney, to be present at the next meeting to discuss the legality of the transfer.

On September 14, Cagle informed the new Board that when the five-member Board transferred Pennycuff's tenure, it intended to grant Pennycuff tenure and, therefore, the transfer was valid. In addition, Cagle stated that the Board's action was legal because the superintendent had not objected to the transfer. Finally, Cagle pointed out that the Board's practice of selectively approving minutes from prior meetings was improper because the Board's approval merely confirmed that the Board took certain actions at a previous meeting. Therefore, the minutes from earlier meetings must be approved in their entirety with any corrections noted. If the Board wished to alter a previous decision, there first must be a motion to reconsider and then a motion to rescind or change.

On November 10, 1994, Board member Notie Byrd moved the Board to ratify the Pennycuff tenure action taken by the Board at its August 30 meeting. Although Byrd's motion received a second, the Board tabled ratification until the next meeting. At the Board's December 5 meeting, however, the Board decided not to vote on whether it should ratify the action taken at its August 30 meeting. Thus, the transfer of Pennycuff's tenure to the Fentress County school system was never approved or ratified by the ten-member Board.

Pennycuff continued to serve as the principal of Clarkrange High School for the 1994–1995 school year. At a regular Board meeting on May 11, 1995, however, the Board voted to transfer him to the Fentress County Alternative School.

After pursuing administrative remedies to contest his transfer to the Alternative

---

1. Prior to the election, Tennessee's Attorney General opined that the private act authorizing the election of a ten-member Board was unconstitutional and that an election pursuant to the act would be invalid as to the five new Board positions. Op. Tenn. Att'y Gen. U94–97 (July 1, 1994).

School, Pennycuff filed a complaint in the Fentress County Chancery Court claiming that his transfer was invalid and constituted an improper demotion. Shortly thereafter, Pennycuff also filed a *quo warranto* action in the Fentress County Chancery Court challenging the constitutionality of the Private Act that created the ten-member Board.

On January 21, 1998, the Fentress County Chancery Court held that the Private Act was unconstitutional and removed the seven Board members elected on August 4, 1994 from office. *Tennessee ex rel. Pennycuff v. Winningham,* No. 96–31 (Ch. Ct. Jan. 21, 1998). Because the Chancery Court's decision left the Board with only three members, the Fentress County Commission appointed Notie Byrd and Eddie Cook, Board members who had been removed from office, to fill the two vacant seats.

Then, on March 16, 1998, the new five-member Board voted to place Pennycuff on a list of non-tenured teachers who were to receive notice that they would not be rehired for the 1998–1999 school year. Shortly thereafter, Pennycuff received a written notice, signed by Superintendent Homer Lee Linder, Jr., and Notie Byrd, that he would not be rehired. However, Pennycuff did not receive notice of any charges against him and he was not afforded an opportunity for a hearing. In addition, Superintendent Linder admitted in his deposition that he knew of no reason, based on Pennycuff's performance, for Pennycuff's termination.

Under Tenn.Code Ann. § 49–5–409, non-tenured teachers must be notified by April 15 each year that they will not be rehired for the next school year, or they are automatically rehired for one more year. In order to meet this deadline, the Board notifies all non-tenured teachers of their non-renewal each year. The Board then rehires non-tenured teachers in the summer for the following school year. Although Pennycuff was listed as a non-tenured teacher at the end of the 1993–1994 school year, he was never listed as a non-tenured teacher after June of 1994 or rehired during the summer. Nor was he ever listed as a teacher who would acquire tenure upon rehire. Instead, the Board automatically renewed his employment for the 1995–1996, 1996–1997, and 1997–1998 school years. In his deposition, Notie Byrd admitted that for the purposes of non-renewal and rehire, the Board and the Superintendent treated Pennycuff as a tenured teacher after September 1, 1994.

## II. Procedural Background

Pennycuff filed suit in this Court on June 10, 1998. He later moved for partial summary judgment on the ground that he was a tenured teacher at the time he was fired by the Board; therefore, his discharge deprived him of property without due process of law in violation of his constitutional and statutory rights. Pennycuff further claimed that the Board violated his First Amendment rights because he was fired in retaliation for filing suit against the Board and successfully having the ten-member Board declared unconstitutional.

On April 5, 1999, the Court granted Pennycuff's motion in part. In the order granting Pennycuff partial summary judgment, the Court held that at the time of his discharge, Pennycuff was a tenured teacher. Plaintiff's termination, therefore, represented a violation of his right to due process because the Board failed to provide Pennycuff with a hearing and because it based the firing on impermissible grounds. Pursuant to the partial summary judgment, this Court awarded Plaintiff full back pay from the time of his discharge at the conclusion of the 1997–98 school year and ordered the Board to reinstate him.

A bench trial was held on the remaining First Amendment claim. On August 31, 1999, the Court entered judgment in the amount of $25,000 in favor of Pennycuff on the basis of his claim for retaliatory discharge against the Board. After resolution of all of his claims, Plaintiff had been awarded the following: (1) back pay and reinstatement pursuant to the original partial summary judgment order; (2) $25,000 in damages pursuant to the judgment entered on the retaliatory discharge claim; and (3) $26,981.26 in attorney fees.

On September 29, 1999, the Board filed its notice of appeal from the Court's grant of summary judgment and the award of attorney's fees. On August 21, 2001, the Sixth Circuit reversed and remanded the case for reconsideration in light of *Bowden v. Memphis Bd. of Educ.* On remand, this Court concluded that it was required to deny Pennycuff's motion for partial summary judgment in light of the *Bowden* decision. Furthermore, the Court ordered Plaintiff to show cause why summary judgment for the Board should not be rendered on the tenure issue. Plaintiff has filed his brief, and the Board has responded.

### III. Discussion

In his motion for summary judgment, Pennycuff argued that he attained tenure based on any of three statutory provisions: (1) § 49–5–503(2), which lists the four criteria for attaining tenure; (2) § 49–5–504(b), which states that permanent tenure shall be attained if, upon completion of the probationary period, any teacher is reemployed by the Board, provided that the superintendent has given notice to the Board; and (3) § 49–5–509, which provides that upon the transfer of a tenured teacher, the local Board may grant tenure upon the recommendation of the superintendent.

As noted in the Court's earlier opinion denying summary judgment, Pennycuff cannot claim tenure under either of the first two provisions. In *Bowden,* the Tennessee Supreme Court considered whether notification to the Board by the superintendent under T.C.A. § 49–5–504(b) is required before a teacher attains permanent tenure, even where the teacher has satisfied the other provisions making him eligible for permanent tenure. The court held that in order to acquire permanent tenure under that provision, a teacher must be rehired by the Board for a fourth year *and* the superintendent must notify the Board prior to reelection that the teacher will attain tenured status if reelected. It is undisputed in this case that the superintendent never gave notice to the Board prior to Pennycuff's reelection.

Therefore, to prevent summary judgment in this matter, Pennycuff must demonstrate that he acquired tenure under the third provision. That provision, § 49–5–509, permits a transferring tenured teacher to receive tenure in a new school district if: (1) it is recommended by the superintendent, and (2) it is approved by the Board. There are no reported Tennessee cases interpreting this particular provision.

It is undisputed that when the Board voted to "transfer" Pennycuff's tenure from the Oneida School System to the Fentress County School System at the August 30, 1994 meeting, it did not act pursuant to a recommendation of the superintendent. Rather, Freddie Stults, a Board member who had been defeated in the controversial election, brought forth the motion for the tenure transfer. The superintendent, Marjorie Wright, attended the meeting and did not object to the motion. In response to the Court's show cause order, Pennycuff argues that the Board's actions were sufficient to grant him tenure and that the Court should not require the affirmative recommendation of the superintendent to award tenure in his case.

■ Pennycuff initially asserts that the provisions of the Education Improvement Act of 1992 ("EIA"), which altered the conditions for conference of tenure, do not apply in this instance because Fentress County did not implement the EIA until 2000, when Lee Linder was appointed superintendent. This argument is without merit. Although the EIA altered the method of selection for superintendents, specifying that they were to be appointed by the school board, the statute provided that a county could retain its then-current method of selection of superintendent (e.g., election) for an additional term of office. Prior to the appointment of Linder, Fentress County decided to retain its elected superintendent. However, there is no indication in the statute that the provisions of the EIA would not apply during the transition period.

■ Next, Pennycuff argues that even if the EIA applies to his case, the recommendation of the superintendent is not required in this instance because the EIA granted the appointed superintendent additional power over the tenure decision that an elected superintendent did not have. As noted, Marjorie Wright was an elected superintendent on August 30, 1994, the date of the alleged conference of tenure. Despite Pennycuff's suggestion to the contrary, the Court is not convinced that the distinction between the powers of an elected and an appointed superintendent is warranted under the statute. Pennycuff has not directed the Court to any portion of the statute purporting to limit its reach to appointed superintendents. Indeed, the definition of "superintendent" contained in § 49–5–501 makes no such distinction; rather, "[s]uperintendent refers to the local superintendent of schools, or to any other officer performing the functions of a superintendent." It is undisputed that Wright was performing the functions of a superintendent at the time of the meeting; therefore, the provisions of the EIA apply to the facts of this case.

Pennycuff next argues that the discussion of the requirement of "notification" in *Bowden* cannot be applied to the analysis of "recommendation" in the transfer provision. While Plaintiff is correct that *Bowden* interprets a different term in a different statutory provision, the Tennessee Supreme Court's technical reading of the statute in *Bowden* is instructive. In that case, the court undertook a plain language evaluation of the statute and indicated an acceptance of limitations on the right of tenure.

Pennycuff also argues that requiring the affirmative recommendation of the superintendent is in conflict with other decisions of the Tennessee Supreme Court, specifically *Sanders v. Vinson*, 558 S.W.2d 838, 842 (Tenn.1977). The *Sanders* case is of little value in interpreting the provision in this case. First, the statute at issue in *Sanders* was the predecessor to the provision at issue here. Second, and more importantly, while the court in *Sanders* noted the absence of a statutory requirement for recommendation as a condition for employment, the tenure provision at issue here contains an explicit requirement for the recommendation of the superintendent.

Furthermore, interpreting § 49–5–509 to require the affirmative recommendation of the superintendent is in accord with other interpretations of similar provisions. In reference to another provision related to teacher tenure, the Tennessee Attorney General has opined that "the ordinary and natural meaning of the statutory provision that the local board may grant tenure to a teacher 'upon the recommendation of the superintendent' is that tenure shall be given only when the superintendent favorably recommends it and the board approves."

*See* Op. Tenn. Att'y Gen. 98–009 (January 9, 1998).

In this case, the Court sees no reason not to give the language of the transfer provision its plain meaning. Because the statute provides that the Board only may waive the three year probationary period in the new system upon the recommendation of the superintendent, the Court finds that the affirmative recommendation of the superintendent is required to "transfer" a teacher's tenure. This interpretation is justified in light of the Tennessee Supreme Court's similar reading of other provisions regarding the conference of permanent tenure. Furthermore, any other interpretation would render the recommendation language of the provision superfluous. Because it is undisputed that the Board did not act pursuant to the recommendation of the superintendent prior to the alleged conference of tenure, Pennycuff did not attain tenured status. As a matter of law, therefore, Pennycuff cannot claim tenure in Fentress County and summary judgment is appropriate.

 Regardless of the reversal of the finding on the tenure issue, it does not appear that any of the remedies previously ordered by the Court in this case must be disturbed. Case law indicates that back pay and reinstatement are appropriate remedies for a retaliatory discharge in violation of Pennycuff's First Amendment rights, a finding which the Board did not appeal and which is unaffected by the decision in *Bowden*. *See, e.g., Conklin v. Lovely*, 834 F.2d 543, 552 (6th Cir.1987). Pennycuff's right to attorney fees and the Court's computation of the fees also are unaffected by the decision in *Bowden*. *See Hadix v. Johnson*, 65 F.3d 532, 534 (6th Cir.1995) (noting that "section 1988 places the award of reasonable attorney fees within the discretion of the court").

## IV. Conclusion

For the foregoing reasons, summary judgment is rendered in favor of the Defendants in this matter.

An appropriate order will enter.